Marc Van Der Hout, Cal. Bar No. 80778
Johnny Sinodis, Cal. Bar No. 290402
Christine Raymond (admitted pro hac vice)
Van Der Hout LLP
360 Post Street, Suite 800
San Francisco, CA 94108
(415) 981-3000
ndca@vblaw.com

Amber Qureshi (admitted pro hac vice)
Matthew Vogel (admitted pro hac vice)
National Immigration Project
1200 18th Street NW, Suite 700
Washington, DC 20036
(202) 470-2082
amber@nipnlg.org
matt@nipnlg.org

Diala Shamas (admitted pro hac vice)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464
dshamas@ccrjustice.org

Golnaz Fakhimi (admitted pro hac vice)
Muslim Advocates
1032 15th Street N.W. #362
Washington, D.C. 20005
(202) 655-2969
golnaz@muslimadvocates.org

*Attorneys for Plaintiff Van Der Hout LLP (continued on next page)*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| VAN DER HOUT LLP,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. DEPARTMENT OF STATE,<br><br>Defendants. | No. 3:24-cv-01095<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**Date: December 5, 2024**<br>**Time: 10:00 a.m.**<br>**Courtroom: 11**<br>**Hon. James Donato** |

*[Caption Page Continued – Additional Attorneys for Plaintiff Van Der Hout LLP]*

Christopher Godshall-Bennett (admitted pro hac vice)
American-Arab Anti-Discrimination Committee
1705 DeSales Street, NW, Suite 500
Washington, D.C. 20036
(202) 244-2990
cgb@adc.org

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on December 5, 2024, at 10:00 a.m., or another date and time that are convenient for the Court, Plaintiff will bring for hearing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure in this Freedom of Information Act (FOIA) action on grounds that, *inter alia*, Defendants failed to conduct adequate searches for responsive records and are unlawfully withholding agency documents. The hearing will take place before the Honorable James Donato. This motion is based on this notice, the attached memorandum of points and authorities, the accompanying declaration and attached exhibits, all pleadings and papers filed in this action, and such oral argument and evidence as may be presented at the hearing on the motion.

**RELIEF SOUGHT**

Plaintiff requests that the Court issue an Order granting summary judgment in their favor and against Defendants. The Court should find and declare that Defendants have failed to comply with FOIA by delaying processing of Plaintiff's request. Defendants should be ordered to disclose all responsive records to Plaintiff within fourteen days of the date of the Court's order granting summary judgment. The Court should further order Defendants to conduct new searches that are reasonably calculated to uncover responsive information within thirty days of the date of the Court's order and to process for disclosure responsive records within forty-five days.

**ISSUES TO BE DECIDED**

The issues to be decided are whether: (1) Defendants violated FOIA by improperly refusing to conduct a search or respond to the FOIA request within the statutory period; (2) Defendants failed to conduct timely and adequate searches reasonably calculated to uncover responsive records; (3) Defendants have violated FOIA by withholding and failing to disclose agency records; (4) Defendants have improperly applied FOIA Exemption 1 to withhold agency records from Plaintiff; and (5) Plaintiff is entitled to declaratory and injunctive relief.

Dated: September 19, 2024                             Respectfully submitted,

                                                                      /s/ Johnny Sinodis
                                                                      Johnny Sinodis

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

I.     The Visa Waiver Program. ........................................................................................ 3

II.    Israel's Designation into the Visa Waiver Program. ............................................. 3

III.   Plaintiff's FOIA Request. ........................................................................................ 5

IV.   Defendants' Searches and Withholdings. ............................................................... 5

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ......................................................................................................................... 6

I.     Defendants Failed to Render Timely Determinations on Plaintiff's FOIA Request and Failed to Make Responsive Documents Promptly Available. ........................................................ 6

II.    Defendants Failed to Conduct an Adequate Search................................................... 7

    A.   DOS's search was extremely narrow and did not cover custodians or offices clearly within the scope of Plaintiff's FOIA request. ................................................... 8

    B.   DOS's search terms were inadequate to uncover responsive records............................. 10

    C.   DOS used unnecessary and confusing search timeframes. ............................................. 11

    D.   DHS's search was not sufficiently thorough. ................................................................ 11

    E.   DHS did not search all applicable offices and custodians. ............................................ 12

    F.   Defendants must conduct proper and adequate searches. ............................................. 12

III.   Defendants Have Failed to Carry Their Heavy Burden to Justify Withholding Under Exemption 1 and the Court Must Order Defendants to Promptly Disclose the Thirteen Pages of Withheld Information. ................................................................................... 13

    A.   Defendants cannot properly withhold information under Exemption 1 simply because its disclosure would reveal illegal activity.................................................................. 14

    B.   Defendants have failed to comply with procedural requirements governing E.O. 13526.15

    C.   Defendants have not substantiated why their withholding is necessary to protect their asserted interests. ........................................................................................... 16

       1.   Section 1.4(b) pertaining to "Foreign Government Information" is inapplicable. ....... 17

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

2.      Section 1.4(d) regarding "Foreign Relations or Foreign Activities" is inapplicable.... 20

D.      DOS Failed to Reasonably Segregate Non-Exempt Information. .................................... 22

IV.     The Withheld Information Has Been Previously Disclosed or Is Otherwise Known to the

Public. ....................................................................................................................................... 23

**CONCLUSION** ...................................................................................................................... **25**

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                     Page(s)

3

*Am. C.L. Union of N. Cal. v. Fed. Bureau of Investigation*,
  No. C 12–03728 SI, 2014 WL 4629110 (N.D. Cal. Sept. 16, 2014).........................................14

4

5

*Am. C.L. Union v. U.S. Dep't of Def,*,
  389 F. Supp. 2d 547 (S.D.N.Y. 2005) ......................................................................................15

6

7

*Am. C.L. Union v. U.S. Dep't of Just.*,
  880 F.3d 473 (9th Cir. 2018) ..................................................................................................17

8

9

*Am. C.L. Union v. Off. of the Dir. of Nat'l Intel.*,
  2011 WL 5563520 (S.D.N.Y. Nov. 15, 2011)...........................................................................21

10

11

*Am. Oversight v. U.S. Gen. Serv. Admin.*,
  311 F. Supp. 3d 327 (D.D.C. 2018)....................................................................................11, 12

12

13

*Assembly of Cal. v. U.S. Dep't of Com.*,
  968 F.2d 916 (9th Cir.1992) ...................................................................................................13

14

*Bagwell v. U.S. Dep't of Just.*,
  311 F. Supp.3d 223 (D.D.C. 2018) .........................................................................................12

15

16

*Campbell v. U.S. Dep't of Just.*,
  164 F.3d 20 (D.C. Cir.1998) .............................................................................................12, 13

17

18

*Canning v. U.S. Dep't of State*,
134 F. Supp. 3d 490 (D.D.C. 2015)..........................................................................................16

19

*Canning v. U.S. Dep't of State*,
  346 F. Supp. 3d 1 (D.D.C. 2018)............................................................................................15

20

21

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..................................................................................................................6

22

23

*Church of Scientology of Cal. v. U.S. Dep't of the Army*,
  611 F.2d 738 (9th Cir. 1979) .............................................................................................13, 22

24

*Ctr. for Nat'l Sec. Stud. v. U.S. Dept. of Just.*,
  215 F. Supp. 2d 94 (D.D.C. 2002) ..........................................................................................13

25

26

*Darui v. U.S. Dep't of State*,
  798 F. Supp. 2d 32 (D.D.C. 2011)...........................................................................................18

27

*Davin v. U.S. Dep't of Just.*,
  60 F.3d 1043 (3d Cir. 1995) ....................................................................................................21

28

*Dep't of the Air Force v. Rose*,
  425 U.S. 352 (1976) ................................................................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Elec. Frontier Found. v. U.S. Dept. of Just.*,
    376 F. Supp. 3d 1023 (N.D. Cal. 2019) ................................................................. 13

*Elec. Frontier Found. v. Cent. Intel. Agency*,
    No. C 09-3351 SBA, 2013 WL 5443048 (N.D. Cal. Sept. 30, 2013) ...................... 16

*Fed. Election Comm'n v. Akins*,
    524 U.S. 11 (1998) ................................................................................................ 7

*Fitzgibbon v. Cent. Intel. Agency*,
    911 F.2d 755 (D.C. Cir. 1990) ......................................................................... 23, 25

*Gilmore v. U.S. Dep't of Energy*,
    33 F. Supp. 2d 1184 (N.D. Cal. 1998) .................................................................. 7

*Hamdan v. U.S. Dept. of Just.*,
    797 F.3d 759 (9th Cir. 2015) ........................................................................*Passim*

*Hiken v. Dep't of Def.*,
    No. C 06-2812 MHP, 2012 WL 13118568 (N.D. Cal. Feb. 3, 2012) ...................... 17

*Hiken v. Dep't of Def.*,
    872 F. Supp. 2d 936 (N.D. Cal. 2012) .................................................................. 17

*Hunt v. Cent. Intel. Agency*,
    981 F.2d 1116 (1992) ......................................................................................... 14

*Inter-Coop. Exch. v. U.S. Dep't of Com.*,
    36 F.4th 905 (9th Cir. 2022) .............................................................................. 10

*Jud. Watch, Inc. v. Food & Drug Admin.*,
    449 F.3d 141 (D.C. Cir. 2006) ......................................................................... 6, 13

*Kamman v. U.S. Internal Revenue Serv.*,
    56 F.3d 46 (9th Cir. 1995) ................................................................................. 14

*King v. Dep't of Just.*,
    830 F.2d 210 (D.C. Cir. 1987) ........................................................................... 21

*Kinnucan v. Nat'l Sec. Agency*,
    No. C20-1309 MJP, 2022 WL 16716224 (W.D. Wash. Nov. 4, 2022) ............... 16, 17

*Knight First Amend. Inst. at Columbia Univ. v. Cent. Intel. Agency*,
    11 F.4th 810 (D.C. Cir. 2021) ............................................................................. 23

*Lessner v. U.S. Dep't of Com.*,
    827 F.2d 1333 (9th Cir. 1987) ............................................................................ 14

*Lewis v. Internal Revenue Serv*,
    823 F.2d 375 (9th Cir. 1987) .............................................................................. 14

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

*Mead Data Cent., Inc. v. U.S. Dept. of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ................................................................ 22

*Nat. Res. Def. Council, Inc. v. U.S. Dep't of Def.*,
   388 F. Supp. 2d 1086 (C.D. Cal. 2005) ..................................................... 22

*Nat. Res. Def. Council, Inc. v. U.S. Env't Prot. Agency*,
   966 F.2d 1292 (9th Cir. 1992) ..................................................................... 7

*Our Child. Earth Found. v. Nat'l Marine Fisheries Serv.*,
   Nos. 14–4365 SC, 14–1130 SC, 2015 WL 4452136 (N.D. Cal. July 20, 2015) ........................ 7

*Pac. Fisheries, Inc. v. United States*,
   539 F.3d 1143 (9th Cir. 2008) .................................................................... 13

*Physicians for Hum. Rts. v. U.S. Dep't of Def.*,
   675 F. Supp. 2d 149 (D.D.C. 2009) ............................................................ 23

*Poulsen v. Dep't of Def*,
   373 F. Supp. 3d 1249 (N.D. Cal. 2019) ...................................................... 23

*Rosenberg v. U.S. Dep't of Def.*,
   342 F. Supp. 3d 62 (D.D.C. 2018) ....................................................... 17, 18

*Rosenberg v. U.S. Dep't of Def.*,
   442 F. Supp. 3d 240 (D.D.C. 2020) ............................................................ 18

*Rosenfeld v. Dep't of Just.*,
   57 F.3d 803 (9th Cir. 1995) ....................................................................... 13

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
   No. CIV. S-06-2845 LKK/JFM, 2008 WL 2523819 (E.D. Cal. June 20, 2008) ........................ 7

*Spirko v. U.S. Postal Serv.*,
   147 F.3d 992 (D.C. Cir. 1998) ................................................................... 23

*Truit v. Dep't of State*,
897 F.2d 540 (D.C. Cir. 1990) ...................................................................... 7

*Unrow Hum. Rts. Impact Litig. Clinic v. U.S. Dep't of State*,
   134 F. Supp. 3d 263 (D.D.C. 2015) ............................................................ 18

*Valencia-Lucena v. U.S. Coast Guard*,
   180 F.3d 321 (D.C. Cir. 1999) ................................................................... 12

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ................................................................... 13

*Wiener v. Fed. Bureau of Investigation*,
   943 F.2d 972 (9th Cir. 1991) ............................................................... 14, 21

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

*Wolf v. Cent. Intel. Agency*,
    473 F.3d 370 (D.C. Cir. 2007) .................................................................................... 23

*Zemansky v. U.S. Env't Prot. Agency*,
    767 F.2d 569 (9th Cir. 1985) .............................................................................. 6, 12

**Statutes**

5 U.S.C. § 552 .......................................................................................................... 19

5 U.S.C. § 552(a)(3)(A) ........................................................................................ 6, 7

5 U.S.C. § 552(a)(3)(C) ........................................................................................ 6, 7

5 U.S.C. § 552(a)(4)(B) ..................................................................................... 6, 13

5 U.S.C. § 552(b) .................................................................................................... 22

5 U.S.C. § 552(b)(1) ............................................................................ 1, 6, 14, 15

8 U.S.C. § 1187 .......................................................................................................... 1

8 U.S.C. § 1187(a)(2) ............................................................................................... 3

8 U.S.C. § 1187(a)(2)(A) ................................................................................... 2, 15

**Rules**

Fed. R. of Civ. Pro. 56 ............................................................................................. 1

**Regulations**

8 C.F.R. § 217 ............................................................................................................ 4

**Other Authorities**

Executive Order (E.O.) 13526 .................................................................*Passim*

Designation of Israel for the Visa Waiver Program, 88 Fed. Reg. 67063 (Sept. 29, 2023) ........... 4

Classified National Security Information, 75 Fed. Reg. 707 (Dec. 29, 2009)............................. 14

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Van Der Hout LLP moves this Court for an order granting summary judgment against Defendants U.S. Department of Homeland Security (DHS) and U.S. Department of State (DOS). Plaintiff, through a FOIA request and now this action, seeks to compel Defendants to produce the Memorandum of Understanding (MOU) between the U.S. and Israel signed on July 19, 2023, and records reflecting changes to the MOU. Defendants speciously claim that FOIA Exemption 1 exempts the only record discovered by their tardy and inadequate searches for responsive information. *See* 5 U.S.C. § 552(b)(1) (exempting from disclosure records authorized to be kept secret by Executive Order (E.O.) 13526). That thirteen-page record—which Defendants and Israel have publicly acknowledged and described via numerous official communications, and which is believed to be available on the internet[1]—likely constitutes the MOU specifying the conditions governing Israel's entry into the Visa Waiver Program (VWP). *See* 8 U.S.C. § 1187 (Visa Waiver Program for Certain Visitors).[2]

Specifically, Defendants assert that Sections 1.4(b) (foreign government information) and 1.4(d) (foreign relations or foreign activities of the United States) of E.O. 13526 require the withholding of *all* information within the thirteen-page document, including its title, notwithstanding (1) Defendants' public statements about the MOU, (2) DHS's identification of the title of the document in its own declaration, (3) DOS's official acknowledgement that the terms of the MOU permitted Israel to discriminate against Palestinian Americans, and (4) Israel's recitation of those terms on an Israeli government website. In claiming this exemption, Defendants ignore that Section 1.7 of E.O. 13526 explicitly states that materials are "in no case" to be classified to, among other things, "conceal violations of the law." Here, the terms of the

---

[1] "Memorandum of Understanding between The Government of the State of Israel And The Government of the United States of America On Extension of Reciprocal Privileges and the Visa Waiver Program," FOUNDATION FOR MIDDLE EAST PEACE (July 21, 2023), https://fmep.org/wp-content/uploads/US-Israel-VWP-MOU-.pdf.

[2] Even Israeli media has claimed to have been provided a copy of the MOU. *See,* "Despite US pledge of equal treatment, Gazan Americans left out of Visa Waiver Program," TIMES OF ISRAEL (July 20, 2023), https://www.timesofisrael.com/despite-us-pledge-of-equal-treatment-gazan-americans-left-out-of-visa-waiver-program/.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1   MOU, as announced by DOS through official channels and further described below, clearly

2   constitute a violation of the law—specifically, 8 U.S.C. § 1187(a)(2)(A) (what is known as the

3   "Blue is Blue" full reciprocity requirement).

4       The information hidden by Defendants' withholdings and inadequate searches is essential

5   to Plaintiff's advocacy and efforts to educate the public regarding Defendants' decision to permit

6   Israel to participate in the VWP while discriminating against Palestinian Americans, in clear

7   violation of the VWP's central "Blue is Blue" requirement. *Id.* (requiring that participating

8   countries provide full reciprocal privileges to all U.S. citizens). This is undoubtedly a matter of

9   pressing public importance, given the importance of the availability of the confirmed MOU to

10  the public. Defendants' numerous official statements regarding its signing and the terms of

11  Israel's participation in the VWP lead to the conclusion that the sweeping exemptions

12  Defendants claim are designed to frustrate, rather than serve, bona fide national defense or

13  foreign policy interests. Defendants' blanket assertion of privilege under Exemption 1 abdicates

14  their most basic obligations under FOIA to provide a reasonably detailed description of the

15  withheld information. Defendants also take the position that the thirteen-page document contains

16  no segregable information but do not bother to substantiate that categorical conclusion. Finally,

17  although Defendants lean on E.O. 13526 to invoke Exemption 1, their *Vaughn* index lacks

18  sufficient detail to permit Plaintiff or the Court to determine whether foreign government

19  information, or foreign relations or foreign activities of the United States, would genuinely be

20  implicated by partial or full disclosure of the MOU.

21      Because Defendants have not met their burden to demonstrate they conducted adequate

22  searches and that the claimed FOIA exemption applies to the MOU, this Court should grant

23  Plaintiff summary judgment, compel Defendants' release of the MOU within fourteen days of

24  that grant, and order that Defendants conduct new searches for records reflecting any changes to

25  the MOU. In the alternative, this Court should conclude that Defendants failed to meet their

26  burden to provide the Court and Plaintiff with adequate descriptions of the MOU, to explain why

27  Exemption 1 applies specifically in this instance, and/or to assess meaningfully whether there are

28  segregable portions of the MOU that must be disclosed to Plaintiff notwithstanding Exemption 1.

On this latter basis, the Court should order (1) review *in camera* of the MOU, (2) the release of

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1   all segregable portions of the MOU, and (3) expeditious new searches for records reflecting any

2   changes to the MOU.

3                                    **FACTUAL BACKGROUND**

4       **I.      The Visa Waiver Program.**

5           The VWP allows nationals from 41 countries to enter the U.S. as temporary visitors for

6   business or pleasure without first obtaining a visa. Countries that seek to qualify for it must, *inter*

7   *alia*, offer reciprocal privileges to U.S. citizens—meaning, they must allow visa-free entry to *all*

8   U.S. citizens and cannot discriminate between classes of U.S. citizens. *See* 8 U.S.C. §

9   1187(a)(2). This reciprocity requirement is also known as the "Blue is Blue" requirement. *Id*.

10  Defendants have the authority to designate countries as eligible to participate in the VWP.

11  However, DHS must certify that the designated country meets all VWP requirements. Plaintiff

12  asserts that Defendants admitted Israel into the VWP despite its non-compliance with the "Blue

13  is Blue" requirement, and Plaintiff seeks a copy of the MOU to establish that.

14      **II.     Israel's Designation into the Visa Waiver Program.**

15          In August 2023, DOS announced that, on July 19, 2023, the U.S. and Israel "signed a

16  Memorandum of Understanding on the Extension of Reciprocal Privileges and the Visa Waiver

17  Program (MOU on Reciprocity), which details the steps Israel is committed to take to extend

18  reciprocal privileges to all U.S. citizens and nationals…as required for participation in the

19  [VWP]." Declaration of Johnny Sinodis (Sinodis Decl.) at Exh. K, Israel's Commitments to

20  Extend Reciprocal Privileges to All U.S. Citizens; *see also id*. at Exh. I, Statement by National

21  Security Advisor Tzachi Hanegbi on Israel's Participation in the US Visa Waiver Program. As

22  explained in Plaintiff's Complaint, ECF 1 ¶ 7, the MOU's terms, as described by DOS, are

23  discriminatory against Palestinian Americans seeking to enter Israel under the VWP.[3]

24          On September 11, 2023, the Israeli government released a document establishing entry

25  procedures for U.S. citizens under the VWP. Sinodis Decl. at Exh. L, Reciprocal privileges for

26

27  _____
    [3] *See* Senator Chris Van Hollen, "Van Hollen, Schatz Lead More Than A Dozen Colleagues In
    Letter To Administration On Israel's Non-Compliance with Key Visa Waiver Program
28  Requirements," (Sept. 8, 2023), https://www.vanhollen.senate.gov/news/press-releases/van-
    hollen-schatz-lead-more-than-a-dozen-colleagues-in-letter-to-administration-on-israels-non-
    compliance-with-key-visa-waiver-program-requirements.

                    NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

U.S. citizens at border control (delineating a two-tiered system for entry into Israel–one for Palestinian Americans, and another for everyone else). Those procedures explicitly state that U.S. citizens who are residents of Gaza are ineligible for visa-free travel to Israel, thus corroborating the concern of many that Israel was and is discriminating against Palestinian Americans in violation of the VWP. *Id*. at 3-4.

Notwithstanding these concerns, on September 26, 2023, Defendants designated Israel as a country eligible to participate in the VWP. *See* Designation of Israel for the Visa Waiver Program, 88 Fed. Reg. 67063 (Sept. 29, 2023) (to be codified at 8 C.F.R. § 217). Both Defendants subsequently released statements regarding Israel's designation into the VWP, which referenced "updates" made by Israel "to its entry policies to meet the [VWP] requirement to extend reciprocal privileges to all U.S. citizens without regard to national origin, religion, or ethnicity." Sinodis Decl. at Exh. M, Secretary Mayorkas and Secretary Blinken Announce Designation of Israel into the Visa Waiver Program; *see also id*. at Exh. N, Joint Statement on the Designation of Israel into the Visa Waiver Program. Neither Defendant described what "updates" Israel made to comply putatively with the VWP. In fact, the Israeli government itself did not make any amendments or additions to the entry procedures on its official website. *Id*. at Exh. L, Reciprocal privileges for US citizens at border control.[4]

Within weeks of Israel's admission into the VWP, the New York Times and Axios reported that Israel was violating the VWP by blocking the entry of Palestinian Americans from the West Bank.[5] In May 2024, Israel initiated its Electronic Travel Authorisation to Israel (ETA-IL) for U.S. citizens. As part of the program's launch, Israel released instructions, stating that,

---

[4] DOS continues to cite the "Israeli government webpage" where the same September 11, 2023, version of "Reciprocal privileges for US citizens at border control" is available. *Id*. at Exh. L.
[5] Eileen Sullivan, Edward Wong & Patrick Kingsley, "Israel Blocks Palestinian Americans From Entering From West Bank," N.Y. TIMES (Nov. 16, 2023), https://www.nytimes.com/2023/11/16/us/politics/israel-palestinian-americans-west-bank.html; Barak Ravid, "Scoop: U.S. warns Israel it's violating visa waiver deal with West Bank closure," AXIOS (Nov. 15, 2023), https://www.axios.com/2023/11/16/israel-visa-waiver-palestinian-americans-us-violation. In December 2023, the Israeli government reportedly began to allow Palestinian Americans entry into Israel from the West Bank. *See* "U.S. Citizens with a Palestinian Authority (PA) ID/Passport Can Apply for Permits for Short-Term Visits to Israel Beginning December 8," U.S. EMBASSY IN ISRAEL (Dec. 10, 2023), https://il.usembassy.gov/message-to-u-s-citizens-u-s-embassy-jerusalem-december-10-2023/.

"[i]f you are a Gaza resident you can apply for a US Tourist Permit for Israel," and that "[t]he approval of [visa free travel] is not valid for residents of the Gaza Strip." Sinodis Decl. at Exhs. P-Q, Entry of Palestinian American Tourists Into Israel. These reports and announcements confirm that the terms of the MOU, and any updates thereto, do not meet the "Blue is Blue" reciprocity requirement under the VWP. And, despite the announcements surrounding the MOU, the document has not been made publicly available through official channels.

### III. Plaintiff's FOIA Request.

On October 27, 2023, Plaintiff submitted a FOIA request to Defendants, including their components, divisions, subdivisions, and/or sections, seeking a copy of the MOU and any updates to the terms of the MOU since it was signed on July 19, 2023. *See* ECF 1 ¶ 40; ECF 1-1 at <u>Exh. A</u>, pp. 5-8. On February 23, 2024, Plaintiff filed their Complaint, *see* ECF 1, because Defendants had not made determinations on the FOIA request or released any responsive record(s), in violation of the FOIA's statutory deadlines.

### IV. Defendants' Searches and Withholdings.

On April 15, 2024, Plaintiff provided Defendants an unsigned, thirteen-page copy of what is believed to be the MOU at issue in this matter, which the Foundation for Middle East Peace made publicly available on its website.[6] Sinodis Decl. at Exh. B, Unsigned MOU. Defendants filed their Answer on April 17, 2024. *See* ECF 29.

On May 22, 2024, Defendants provided two letters to Plaintiff regarding their searches for information responsive to the FOIA request. DHS stated it "located 13 pages of records[]in response to FOIA request parts a and b," and further stated that "[t]hose records are under the purview of" DOS. Sinodis Decl. at Exh. C, DHS Final Response. As a result, DHS transferred those pages to DOS "for processing and direct response to" Plaintiff. *Id*. DHS stated it "located no responsive records for FOIA request part c." *Id*. DOS, in turn, stated it "identified one responsive record subject to FOIA" and claimed that "the record must be withheld in its entirety," citing "FOIA Exemption 1[.]" *Id*. at Exh. D, DOS Final Response.

On August 29, 2024, DOS provided Plaintiff a declaration regarding its search for responsive information and its explanations for why it believes the thirteen-page document is

---

[6] *See supra* note 1.

exempt from disclosure under FOIA Exemption 1, 5 U.S.C. § 552(b)(1). Sinodis Decl. at Exh. E, Declaration of Timothy J. Kootz (Kootz Decl.). Although DOS initially did not classify the one responsive record discovered by its search, *see id.* at Exh. G, DOS *Vaughn* index, DOS claims that it subsequently determined that Section 1.4(b) requires the MOU be withheld, citing "an existing international agreement, 'the General Security of Information Agreement ('GSOIA') between the United States of America and Israel'" and Section 4.1(h) of E.O. 13526. Kootz Decl. ¶ 27. As will be explained below, DOS's search was clearly inadequate, and its basis for withholding the thirteen-page document is meritless.

On September 11, 2024, DHS provided a declaration regarding its search. *Id.* at Exh. H, Declaration of Catrina Pavlik-Keenan (Pavlik-Keenan Decl.). Like DOS, DHS failed in its duty to search adequately for responsive information. Unlike DOS, however, DHS did identify the title of the thirteen-page that it discovered. *Id.* at ¶ 9 (referencing the MOU's full title).

## LEGAL STANDARD

Summary judgment is appropriate when the moving party affirmatively establishes that there is no genuine issue of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment in a FOIA case, the Court must view all the facts and make all reasonable inferences "in the light most favorable to the requestor." *Zemansky v. U.S. Env't Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985). Because of the "asymmetrical distribution of knowledge" in FOIA cases, "where the agency alone possesses, reviews, discloses, and withholds the subject matter of the request," *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141 (D.C. Cir. 2006), the agency bears the burden of establishing its search was adequate and each of its asserted withholdings proper, *Zemansky*, 767 F.2d at 571. Defendants bear this burden notwithstanding that Plaintiff is moving for summary judgment. *See* 5 U.S.C. § 552(a)(4)(B).

## ARGUMENT

**I. Defendants Failed to Render Timely Determinations on Plaintiff's FOIA Request and Failed to Make Responsive Documents Promptly Available.**

The uncontroverted record shows Defendants failed to render "prompt" determinations on Plaintiff's request, as required. *See* 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C). Plaintiff filed its request on October 27, 2023, and Defendants took almost seven months to inform Plaintiff that their searches were complete and that the "sole" thirteen-page document they had located would

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

not be disclosed. Kootz. Decl. ¶ 4; Pavlik-Keenan Decl. ¶ 13; Sinodis Decl. at Exh. D, DOS Final Response; *Id.* at Exh. C, DHS Final Response. In fact, based on DOS's declaration, it appears DOS did not even initiate its search until April 30, 2024. Kootz Decl. ¶ 13 (stating, "[t]he search was limited to [] records dated from September 26, 2023, to April 30, 2024.").

Defendants' delay is unjustified and unjustifiable. The text of § 552(a)(3)(A) is unambiguous: Defendants must make the records Plaintiff seeks available "promptly," which does not mean almost seven months later. *See Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1185 (N.D. Cal. 1998) (granting summary judgment to FOIA requester following five-month agency delay); *Our Child. Earth Found. v. Nat'l Marine Fisheries Serv.*, Nos. 14–4365 SC, 14–1130 SC, 2015 WL 4452136, at *8 (N.D. Cal. July 20, 2015) ("[A]n agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA."); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIV. S-06-2845 LKK/JFM, 2008 WL 2523819, at *5 (E.D. Cal. June 20, 2008) (same). Plaintiff is thus entitled to summary judgment providing declaratory and injunctive relief regarding Defendants' violation of FOIA's requirement to make records promptly available.[7]

## II.     Defendants Failed to Conduct an Adequate Search.

Defendants are required to conduct a reasonable search for responsive records using methods that are reasonably expected to produce all existing material. 5 U.S.C. § 552(a)(3)(C). In doing so, Defendants must construe FOIA requests liberally. *Truit v. Dep't of State*, 897 F.2d 540, 544-45 (D.C. Cir. 1990). When search adequacy is doubtful "particularly in view of well-defined requests and positive indications of overlooked materials, summary judgment is appropriate." *Hamdan v. U.S. Dept. of Just.*, 797 F.3d 759, 771 (9th Cir. 2015) (citation omitted). Here, Plaintiff's FOIA request is plainly "well-defined," yet Defendants failed to conduct adequate searches in response. DOS's declaration is completely silent on basic details of how the agency conducted its search, while the information provided shows a lack of coordination

---

[7] Declaratory judgment is appropriate where, as here, an agency has ignored statutory deadlines. *See, e.g.*, *Nat. Res. Def. Council, Inc. v. U.S. Env't Prot. Agency*, 966 F.2d 1292, 1299 (9th Cir. 1992); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) (a "plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute"); *Gilmore,* 33 F. Supp. 2d at 1189 (agency's failure to process FOIA request in a timely manner was itself an injury).

1    between the two individuals tasked with conducting extremely minimal searches and a failure to

2    search the most obvious agency custodians and components or appropriately follow leads. Kootz

3    Decl. ¶¶ 11-16. DHS's separate declaration also raises questions about why the agency did not

4    conduct a more thorough search in relation to Plaintiff's request. Pavlik-Keenan Decl. ¶¶ 7-16.

5          Plaintiff therefore requests that the Court order Defendants within thirty days to: (1)

6    conduct more robust searches, including of the custodians and offices listed below; (2) use

7    additional search terms and appropriate timeframes likely to yield responsive material; and (3)

8    follow clues uncovered through their searches, which Defendants plainly have not yet done.

9          **A.     DOS's search was extremely narrow and did not cover custodians or**
              **offices clearly within the scope of Plaintiff's FOIA request.**

10         DOS's declaration indicates the agency searched only two places: the Bureau of Near

11   Eastern Affairs' Office of Israel and Palestinian Affairs (NEA/IPA) and a narrow portion of

12   DOS's eRecords Archive "limited to NEA for records." Kootz Decl. ¶ 11. The declaration is

13   sparse and does not identify which individual NEA custodians were actually searched, stating

14   only that a "government information specialist…conducted a search of the eRecords Archive on

15   the Department's unclassified system" and that separately, a "Program Assistant" searched a

16   "shared network drive." *Id*. at ¶¶ 13-14. Consequently, the declaration sheds no light on whether

17   the agency searched several key public-facing NEA custodians who could be reasonably

18   expected to have been involved with the VWP. These include, at a minimum, former Deputy

19   Assistant Secretary of State for Israeli-Palestinian Affairs Andrew P. Miller,[8] Special

20   Representative for Palestinian Affairs Hady Amr, Deputy Assistant Secretary for Assistance

21   Coordination/Regional and Multilateral Affairs Chris Backemeyer, and Assistant Secretary

22   Barbara Leaf, as well as each of their staff.[9] Plaintiff asks the Court to order DOS to clarify

23   immediately if and how it has searched each of those custodians, and, if it has not adequately

24   searched them, to do so immediately for records responsive to the FOIA request.

25         Defendants' failure to conduct any search of the U.S. Embassy in Israel (USEI) in

26

27   ───────────────────────

28   [8] Miller served in this position from December 5, 2022, until June 28, 2024. *See* "Andrew P.
     Miller," U.S. Dᴇᴘ'ᴛ ᴏꜰ Sᴛᴀᴛᴇ, https://www.state.gov/biographies/andrew-p-miller.
     [9] "Leadership – Bureau of Near Eastern Affairs" U.S. Dᴇᴘ'ᴛ ᴏꜰ Sᴛᴀᴛᴇ,
     https://www.state.gov/leadership-bureau-of-near-eastern-affairs/.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

response to a FOIA request regarding an agreement between the U.S. and Israel, and their failure

to substantiate why they did not conduct such a search, warrants summary judgment for Plaintiff.

Not only were both the September 27, 2023, and October 19, 2023, press releases referenced in

Plaintiff's FOIA request posted to the Embassy's website upon their release[10] but the very first

menu item visible on the USEI website (Visas) opens to a drop-down menu that specifically

links to a page regarding the "Visa Waiver Program."[11] The USEI even published a "fact sheet"

specific to the VWP and available to the public on August 24, 2023.[12] Tom Nides, the former

U.S. ambassador to Israel, posted a video in January 2023 to social media platform Twitter (now

X) where he said, "Recently I've been asked a lot about the Visa Waiver Program," and then

describes the "steps" Israel has made toward the program at the time.[13] Nides stepped down in

July of 2023, but the current U.S. ambassador to Israel, Jacob Lew, has made numerous public

comments in regards to the VWP. For instance, on February 18, 2024, Lew highlighted the VWP

when listing USEI's recent accomplishments at the National Israel Mission of the Conference of

Presidents of Major American Jewish Organizations.[14] DOS's failure to search obvious

custodians within the USEI—including Nides; Deputy Chief of Mission, Stephanie Hallett, who

stepped in as interim ambassador; and Lew—warrant summary judgment for Plaintiff.

       DOS also failed to search the Bureau of Consular Affairs (BCA), a component that deals

specifically with visas. According to DOS's website, the BCA "help[s] U.S. citizens connect

---

[10] *See, e.g.*, For example, "DHS Announces Start of Applications for Visa-Free Travel to U.S. for Eligible Israeli Citizens and Nationals," U.S. EMBASSY IN ISRAEL, https://il.usembassy.gov/dhs-announces-start-of-applications-for-visa-free-travel-to-u-s-for-eligible-israeli-citizens-and-nationals/; "Joint Statement on the Designation of Israel into the Visa Waiver Program" U.S. EMBASSY IN ISRAEL, https://il.usembassy.gov/joint-statement-on-the-designation-of-israel-into-the-visa-waiver-program/.

[11] *See* "Alerts and Messages," U.S. EMBASSY IN ISRAEL, https://il.usembassy.gov/ .

[12] *See* "Israel's Commitments to Extend Reciprocal Privileges to All U.S. Citizens," U.S. EMBASSY IN ISRAEL, https://il.usembassy.gov/israels-commitments-to-extend-reciprocal-privileges-to-all-u-s-citizens/.

[13] "Important progress on the visa waiver program - watch this video for more information. For U.S. passports, 'Blue is blue,'" X, https://x.com/USAmbIsrael/status/1619984222936260610?lang=en

[14] *See* "Ambassador Lew's Remarks to the National Israel Mission of the Conference of Presidents," U.S. EMBASSY IN ISRAEL, https://il.usembassy.gov/ambassador-lews-remarks-to-the-national-israel-mission-of-the-conference-of-presidents/  (highlighting "crucial specific policies like Israel's entry into the Visa Waiver Program").

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

with the world by issuing millions of U.S. passports each year. We keep our country safe and help foreign nationals connect with the [U.S.] by issuing visas to qualified visitors, workers, and immigrants."[15] Despite BCA being obviously relevant to the substance of Plaintiff's FOIA request, Defendants conducted no searches of BCA and have offered no substantiation for why.

### B.    DOS's search terms were inadequate to uncover responsive records.

How agencies craft search terms "must be both practical and grounded in common sense." *Inter-Coop. Exch. v. U.S. Dep't of Com.*, 36 F.4th 905, 911 (9th Cir. 2022) (citation omitted)). Under this very basic standard, Defendant DOS's searches were obviously inadequate. Instead of crafting terms intended to "uncover all relevant documents," as required by *Hamdan*, 797 F.3d at 770, agency custodians used minimal search terms with little likelihood of capturing all responsive records. DOS's declaration is also silent on why the terms were chosen or whether the parameters of the terms were appropriate for the systems on which they were run.

The NEA/IPA used only two search terms, "Reciprocal Privileges" and "Visa Waiver." Why only these two phrases were chosen is not clear from DOS's declaration, nor is the basis for not using other obvious terms, such as "MOU," "memorandum of understanding," "Blue is Blue," and potentially other words or phrases in combination(s) with other terms. "Government agencies, like all bureaucracies, often use jargon, acronyms, shorthand, and common variants of terms. And when a FOIA request arrives at the agency's doorstep, it may need to keep that in mind when devising search terms." *Inter-Coop. Exch.*, 36 F.4th at 911.

DOS's separate search of the eRecords Archive was equally deficient under *Hamdan*, 797 F.3d at 770, with the agency again running only two searches using the combination term "MOU AND ISRAEL" and the phrase "Visa Waiver." Not only are these extremely limited search terms inadequate but DOS's declaration contains no information regarding whether the platforms on which these searches were run were capable of Boolean connectors, were case-sensitive, or had limits to their responsiveness, especially when given multi-word search terms like "Visa Waiver."

---

[15] *See* "Our Mission" BUREAU OF CONSULAR AFFAIRS, https://www.state.gov/bureaus-offices/under-secretary-for-management/bureau-of-consular-affairs/ .

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1

2          **C.      DOS used unnecessary and confusing search timeframes.**

3          DOS's declaration states that its eArchive search was limited "for records dated from

4  September 26, 2023, to April 30, 2024." Kootz Decl. ¶ 13. No reason is given as to why the

5  beginning date was not July 19, 2023 (when the MOU was signed) or earlier. In fact, at least

6  some of the separate searches of the NEA shared drives did begin on July 19, 2023. *Id*. at ¶ 16.

7  DOS—as well as DHS—must redo any searches responsive to Plaintiff's request that did not

8  begin on July 19, 2023, or earlier.

           **D.      DHS's search was not sufficiently thorough.**

9          In its declaration, DHS states that it first determined that "any records reflecting changes

10 to the MOU would be maintained" by the Office of the Executive Secretary (ESEC). Pavlin-

11 Keenan Decl. ¶ 9. However, ESEC conducted only a "manual search" of records, the details of

12 which are not explained. *Id*. at ¶ 10. Furthermore, DHS provides no details regarding why ESEC

13 did not conduct any type of electronic search, including of any emails and associated

14 attachments. Plaintiff's request was then referred to the Office of Policy, where, again, only a

15 "manual search" of one shared drive folder was conducted, and no electronic searches for

16 documents and/or emails were attempted. *Id*. at ¶12. After finding a copy of the "signed MOU"

17 during this manual search, DHS ceased doing any further searches and sent the MOU to DOS.

18 *Id*. at ¶¶13-16. This is even more concerning as, according to one public report, DHS Under

19 Secretary of Policy Robert Silvers "deserve[s] enormous credit" in getting the MOU signed.[16]

20 Yet there is no mention of any searches conducted of Silvers' files or emails.

21         Conducting only limited manual searches using unknown parameters is clearly not

22 adequate under FOIA. At a minimum, searches of custodian emails and email attachments must

23 be done, as well as any other appropriate electronic searches. An agency's search for responsive

24 records "naturally encompass[es]" emails and email attachments. *Am. Oversight v. U.S. Gen.*

25 _____

26 [16] *See* "Israel is joining the US Visa Waiver Program. Here's what that means," NEW
   ATLANTICIST (Sept. 28, 2023), https://www.atlanticcouncil.org/blogs/new-atlanticist/experts-
27 react/israel-is-joining-the-us-visa-waiver-program/ ("Much of this work received very little
   publicity except among experts and those involved. On the US side, Secretary of Homeland
28 Security Alejandro Mayorkas and Department of Homeland Security Under Secretary for Policy
   Robert Silvers deserve enormous credit for continuing to push through more obstacles than most
   outsiders realize.").

1    *Serv. Admin.,* 311 F. Supp. 3d 327, 338 (D.D.C. 2018) (citing *Bagwell v. U.S. Dep't of Just.*, 311

2    F. Supp.3d 223, 227–28 (D.D.C. 2018)). DHS must therefore re-search ESEC and Office of

3    Policy custodians' emails and other electronically stored records using appropriate and adequate

4    search terms as required by FOIA.

5                    **E.    DHS did not search all applicable offices and custodians.**

6            DHS also did not search additional obvious sub-components, offices, and key custodians

7    for responsive records. For example, it is not clear why DHS did not refer the request to any

8    custodians or offices within the Transportation Security Administration, which oversees the

9    VWP.[17] DHS also did not forward Plaintiff's FOIA request to its subcomponent U.S. Customs

10   and Border Protection (CBP), any individuals within CBP leadership, or any other custodians

11   despite CBP being explicitly connected to the VWP. *See also* Sinodis Decl. ¶ 5, n.1 (explaining

12   Plaintiff and several other organizations filed a subsequent request regarding the U.S.

13   government's monitoring of Israel's compliance with the VWP, and DHS referred that request to

14   CBP for processing and direct response). Additionally, in relation to subpart (c) of Plaintiff's

15   FOIA request, it is concerning that no other searches were done, even as DHS spoke about a new

16   agreement with the national media. For instance, on November 30, 2023, a "DHS official" is

17   quoted discussing the VWP with NBC News in regard to "operational steps" related to travel

18   between Israel and the U.S.[18]

19                   **F.    Defendants must conduct proper and adequate searches.**

20           The FOIA requires that Defendants conduct more than a perfunctory search that is

21   reasonably calculated to produce the documents requested, and in doing so must follow obvious

22   leads to discovery of requested documents. *See Zemansky*, 767 F.2d at 571; *Valencia-Lucena v.*

23   *U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). Defendants failed to do either. Plaintiff

24   has presented "positive indications of overlooked materials," thus shifting the summary

25   judgment burden to Defendants to justify its search. *Valencia-Lucana,* 180 F.3d at 326; *Campbell*

26   ─────────────────

     [17] *See* "U.S. Visa Waiver Program," U.S. Dᴇᴘ'ᴛ ᴏꜰ Hᴏᴍᴇʟᴀɴᴅ Sᴇᴄ., https://www.dhs.gov/visa-
27   waiver-program.
     [18] *See* aura Strickler, Simone Weichselbaum, Julia Ainsley & Abigail Williams, "Some Israelis
28   who want to flee to the U.S. ask why new visa-free travel system won't start until Nov. 30," NBC
     Nᴇᴡs (Oct. 11, 2023), https://www.nbcnews.com/news/world/israelis-visa-free-travel-system-us-
     wont-start-until-november-rcna119874

1    *v. U.S. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir.1998) (search inadequate when agency's

2    produced documents revealed that searching other records might uncover the documents sought);

3    *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 215 F. Supp.2d 94, 110 (D.D.C. 2002) (same).

4    Unless Defendants do so, Plaintiff must be granted summary judgment.

5    **III.    Defendants Have Failed to Carry Their Heavy Burden to Justify**
     **Withholding Under Exemption 1 and the Court Must Order Defendants to**
6    **Promptly Disclose the Thirteen Pages of Withheld Information.**

7         The FOIA provides a strong presumption in favor of disclosure. *Assembly of Cal. v. U.S.*

8    *Dep't of Com.*, 968 F.2d 916, 920 (9th Cir.1992); *Church of Scientology of Cal. v. U.S. Dep't of*

9    *the Army*, 611 F.2d 738, 742 (9th Cir. 1979). Because "disclosure, not secrecy, is the dominant

10   objective of the Act," FOIA's exemptions "must be narrowly construed." *Dep't of the Air Force*

11   *v. Rose*, 425 U.S. 352, 361 (1976). The government always bears the burden to show that records

12   are subject to an exemption and can be withheld. 5 U.S.C. § 552(a)(4)(B); *Rosenfeld v. Dep't of*

13   *Justice*, 57 F.3d 803, 808 (9th Cir. 1995).

14        To properly withhold documents, the government must show that "its search for

15   responsive records was adequate, that any claimed exemptions actually apply, and that any

16   reasonably segregable, non-exempt parts of records have been disclosed after redaction of

17   exempt information." *Elec. Frontier Found. v. U.S. Dept. of Just.*,376 F. Supp. 3d 1023, 1032

18   (N.D. Cal. 2019) (citation omitted); *accord Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143,

19   1148 (9th Cir. 2008). Government declarations in support of withholdings "must describe the

20   justifications for nondisclosure with reasonably specific detail, demonstrate that the information

21   withheld logically falls within the claimed exemptions, and show that the justifications are not

22   controverted by contrary evidence in the record or by evidence of bad faith." *Hamdan*, 797 F.3d

23   at 769. More specifically, agencies are required to submit affidavits or declarations and/or "a

24   *Vaughn* index so that a district judge could 'examine and rule on each element of the itemized

25   list.'" *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973). The *Vaughn* index and/or

26   accompanying affidavits or declarations must "provide[] a relatively detailed justification,

27   specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those

28   claims with the particular part of a withheld document to which they apply." *Jud. Watch, Inc.*,

449 F.3d at 146 (internal quotations omitted). These materials must not "rely upon conclusory

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1   and generalized allegations of exemptions." *Am. C.L. Union of N. Cal. v. Fed. Bureau of*

2   *Investigation*, No. C 12–03728 SI, 2014 WL 4629110, at *3 (N.D. Cal. Sept. 16, 2014) (citing

3   *Kamman v. U.S. Internal Revenue Serv.*, 56 F.3d 46, 48 (9th Cir. 1995); *Lewis v. Internal*

4   *Revenue Serv*, 823 F.2d 375, 378 (9th Cir. 1987)). "A basic policy of FOIA is to ensure that

5   Congress *and not administrative agencies* determines what information is confidential…As such,

6   courts do not defer to a federal agency's determination that the requested information falls under

7   a particular FOIA exemption." *Lessner v. U.S. Dep't of Com.*, 827 F.2d 1333, 1335 (9th Cir.

8   1987) (emphasis added).

9          FOIA Exemption 1 protects national security information, and specifically exempts from

10  disclosure records that are: "(A) specifically authorized under criteria established by an

11  Executive order to be kept secret in the interest of national defense *or* foreign policy and (B) are

12  in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1) (emphasis

13  added). The information must also "pertain[] to" one of the categories of information specified in

14  the E.O., including, as relevant here, "foreign government information" and "foreign relations or

15  foreign activities of the United States…." E.O. 13526 § 1.4(b), (d). Under E.O. 13526,

16  Defendants have the burden of establishing that disclosure of the requested information "could

17  reasonably be expected to cause identifiable or describable damage to the national security."

18  Classified National Security Information, 75 Fed. Reg. 707 (Dec. 29, 2009). To meet that

19  burden, agencies cannot merely provide boilerplate explanations. *Wiener v. Fed. Bureau of*

20  *Investigation*, 943 F.2d 972, 979 (9th Cir. 1991). Rather, agencies "must describe the

21  justifications for nondisclosure with reasonably specific detail, demonstrate that the information

22  withheld logically falls within the claimed exemptions, and show that the justifications are not

23  controverted by contrary evidence in the record or by evidence of agency bad faith." *Id.* at 769

24  (quoting *Hunt v. Cent. Intel. Agency*, 981 F.2d 1116, 1119 (1992). Here, Defendants fail to meet

25  these burdens in a variety of ways.

26          **A.  Defendants cannot properly withhold information under Exemption 1**
                  **simply because its disclosure would reveal illegal activity.**

27

28          Under E.O. 13526, information cannot "be classified" or "continue to be maintained as

    classified" to "conceal violations of law." E.O. 13526 § 1.7(a)(1). Nevertheless, Defendants'

withholding of the signed MOU plainly aims to shield officials from the release of information

revealing violations of law. As explained in Plaintiff's Complaint, for several decades, Israel has

sought admission into the VWP and every administration prior to the current one emphasized

that Israel could not enter the VWP without a commitment to non-discrimination of Palestinian

Americans. ECF 1 ¶¶ 22-26. Yet, public reporting as well as the government's own statements

confirm that the MOU, which stated the terms for Israel's entry into the VWP, clearly

discriminates against Palestinian Americans and, therefore, violates the requirement that Israel

offer reciprocal privileges to all U.S. citizens. *See* 8 U.S.C. § 1187(a)(2)(A). For example, DOS's

announcement states that the MOU provides for specific entry procedures for U.S. citizens who

are residents of Gaza and the West Bank that are not applicable to other classes of U.S. citizens.

Sinodis Decl. at Exh. K, Israel's Commitments to Extend Reciprocal Privileges to All U.S.

Citizens. The terms of the MOU effectively create a special exception to exempt Israel from the

VWP's long-standing reciprocity requirement. Notably, the Kootz Declaration fails to state that

Defendant DOS did *not* withhold this document to conceal illegal activity. Defendants'

withholding of this document under E.O. 13526 certainly "raise[s] concern" that the "purpose of

[Defendants' response] is less to protect [national security] than to conceal possible 'violations

of law.'" *Am. C.L. Union v. Dep't of Def.*, 389 F. Supp. 2d 547, 564 (S.D.N.Y. 2005).

**B. Defendants have failed to comply with procedural requirements governing E.O. 13526.**

FOIA Exemption 1 applies only to records that have been "properly classified" pursuant

to the governing E.O. 5 U.S.C. § 552(b)(1). With respect to records that are classified after the

agency receives a FOIA request, E.O. 13526 permits classification only if three conditions are

satisfied: (1) the records must otherwise meet the requirements for classification; (2) the

classification must be "accomplished on a document-by-document basis;" and (3) that review

must occur either (a) "with the personal participation" of "the agency head, the deputy agency

head, or the senior agency official designated under" the E.O. or (b) "under the direction" of one

of those three officials. E.O. 13526 § 1.7(d). Moreover, "an agency may not unreservedly

delegate that post-request review responsibility to any other official." *Canning v. U.S. Dep't of

State*, 346 F. Supp. 3d 1, 16 (D.D.C. 2018).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, the Director of the Office of Information Programs and Services, Timothy Kootz, classified the information under E.O. 13526 after receiving Plaintiff's FOIA request. Kootz Decl. ¶ 19. However, "[t]he Department does not contend that [Kootz] is authorized to classify information under § 1.7(d), and [Kootz] does not attest that the relevant classifications were all based on a document-by-document review conducted by a person authorized to make such classifications." *Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 507 (D.D.C. 2015). Therefore, Exemption 1 does not apply because Defendants have not "properly classified" the record pursuant to E.O. 13526.

### C. Defendants have not substantiated why their withholding is necessary to protect their asserted interests.

Defendants have completely "failed to provide a particularized explanation of how disclosure of the withheld information in each document would damage the claimed interest protected by nondisclosure." *Elec. Frontier Found. v. Cent. Intel. Agency*, No. C 09-3351 SBA, 2013 WL 5443048, at *7 (N.D. Cal. Sept. 30, 2013). Under E.O. 13526, Defendants must not only show that the information pertains to one of the subsections in Section 1.4, but it must also establish that "its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security." E.O. 13526 § 1.4. Defendants must provide a "logical or plausible explanation" as to why the information is reasonably expected to harm national security. *Kinnucan v. Nat'l Sec. Agency*, No. C20-1309 MJP, 2022 WL 16716224, at *6 (W.D. Wash. Nov. 4, 2022) (citing *Hamdan*, 797 F.3d at 774).

Defendants claim that the "potential damage here is real, identifiable, and describable." Kootz Decl. ¶ 29. Yet, Defendants only offer a "generalized indication of possible consequences of disclosing the information," which is "insufficient to satisfy the reasonable specificity standard." *Elec. Frontier Found.*, 2013 WL 5443048, at *7. The Kootz Declaration merely "speaks in generalities about the risk of disclosure of information." *Kinnucan*, 2022 WL 16716224, at *6. It also fails to explain how releasing an agreement that has already been signed and which both governments have publicly acknowledged and explained in detail could in any way harm national security. Even DOS's Classification Guidance notes that, while "negotiating history of the agreement describing the diplomatic details and discussions could well remain

sensitive for many years," "the signing of an agreement generally means that much of the related information loses its sensitivity." *See* "Classification Guide (DSCG 05-01)," U.S. Dep't of State (Jan. 2005), https://sgp.fas.org/othergov/dos-class.pdf at 6. The Kootz Declaration "also relies on a presumption of harm to national security, which is improper because the "[Defendants] bear[] that burden." *Kinnucan,* 2022 WL 16716224, at *6 (citing *Am. C.L. Union v. U.S. Dep't of Just.*, 880 F.3d 473, 483 (9th Cir. 2018)). Defendants' reasons therefore "are not sufficient in detail and specificity to identify their nature and extent and the harm that would result from their release." *Hiken v. Dep't of Def.*, No. C 06-2812 MHP, 2012 WL 13118568, at *6 (N.D. Cal. Feb. 3, 2012), *order clarified on reconsideration*, 872 F. Supp. 2d 936 (N.D. Cal. 2012).

1. **Section 1.4(b) pertaining to "Foreign Government Information" is inapplicable.**

Defendants have withheld in full a thirteen-page document, the only document located through their inadequate searches, under Exemption 1 pursuant to Section 1.4(b) of E.O. 13526. According to DOS, the "document is an agreement between the Governments of the United States of America and the State of Israel." Sinodis Decl. at Exh. G, DOS *Vaughn* index; *see also* Pavlik-Keenan Decl. ¶ 9 (identifying the MOU's full title). DOS claims that this document has been "classified by the Israeli government as 'Mugbal' (*i.e.*, restricted)," and that DOS cannot release such information under the "General Security of Information Agreement ('GSOIA') between the United States and Israel." Kootz Decl. ¶ 27. DOS further claims that releasing the document may cause damage to national security because, if this document were released, other governments may stop sharing information with the United States. *Id*. at ¶ 29. Defendants' withholding of this document on the basis of Section 1.4(b) is plainly erroneous.

Defendants have not established that the MOU can be classified under Section 1.4(b). Section 1.4(b) provides for the classification of "foreign government information," which is defined as "information provided to the [U.S.] Government by a foreign government ... with the expectation that the information, the source of the information, or both, *are to be held in confidence*," or, conversely, "information produced by the [U.S.] Government pursuant to or as a result of a joint arrangement with a foreign government ... *requiring* that the information ... *be held in confidence*." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 88-9 (D.D.C. 2018), *on*

*reconsideration in part in* 442 F. Supp. 3d 240 (D.D.C. 2020) (citing E.O. 13526 § 6.1(s)) (emphases added).

Defendants fail to show either that the MOU was signed by Israel with the expectation that its contents would be held in confidence or that the information was produced by the U.S. government as part of an agreement "requiring" the information to be held in confidence. Defendants merely claim that the record was at some point "classified by the Israeli government as 'Mugbal' (*i.e.*, restricted)." Kootz Decl. ¶ 27. By providing no detail on the source of the information or the circumstances, Defendants' declarations diverge from those cases where courts found records to fall under Section 1.4(b). *See, e.g.*, *Darui v. U.S. Dep't of State*, 798 F. Supp. 2d 32, 40 (D.D.C. 2011) (finding that Section 1.4(b) applied to information that the government described in a declaration as "obtained in confidence from a foreign government"); *Unrow Hum. Rts. Impact Litig. Clinic v. U.S. Dep't of State*, 134 F. Supp. 3d 263, 272-73 (D.D.C. 2015) (finding that Section 1.4(b) applied to information that the government described in a declaration as "a report of a conversation with senior officials of the British government").

As in *Rosenberg*, Defendants' declarations "fail to show that the redacted information [in the MOU] was provided to the United States explicitly 'to be held in confidence.'" *Rosenberg*, 342 F. Supp. 3d at 88. Section 1.4(b) does not apply here for several reasons.

First, Defendants cite the GSOIA in their declaration, *see* Kootz Decl. ¶ 27, but they fail to show how the GSOIA applies in this case. Perhaps inadvertently, Defendants leave out that the GSOIA references *military* information. Sinodis Decl. at Exh. F, GSOIA. This agreement is titled "Exchange of notes constituting an agreement concerning general security of *military information*." *Id*. (emphasis added).[19] Defendants cannot seriously contend that the agreement

---

[19]   The GSOIA mentions an exchange of notes signed on March 25, 1963, and that this agreement "shall supersede the March 25, 1963 agreement on this matter." Sinodis Decl. at Exh. F, GSOIA. Plaintiff was not able to locate this 1963 exchange of notes, but it likely also addressed military information, as the United States was becoming increasingly concerned about "Israeli nuclearization" at the time and sought to conduct frequent inspections of the Israeli nuclear reactor complex. *See* Avner Cohen & William Burr, "How a Standoff With the U.S. Almost Blew Up Israel's Nuclear Program," HAARETZ (May 3, 2019), https://www.haaretz.com/israel-news/2019-05-03/ty-article-magazine/.premium/how-a-standoff-with-the-u-s-almost-blew-up-israels-nuclear-program/0000017f-e2f7-df7c-a5ff-e2ffc00d0000?v=1725852722252; *see also* "The Battle of the Letters, 1963: John F. Kennedy, David Ben-Gurion, Levi Eshkol, and the U.S. Inspections of Dimona," National Security

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

concerning visa-free entry of Israeli and American citizens concerns military information. Even if part of the agreement contains military information, Defendants have the burden to provide particularized information regarding their withholding and, as noted further below, reasonably segregate any information that is not exempt. *See infra* Sec. III.D.

Second, even assuming the GSOIA applied here, E.O. 13526 does not contemplate nondisclosure of information in this case. The E.O. only contains three classifications: Top Secret, Secret, and Confidential. E.O. 13526 § 1.2. Defendants claim that the Israeli government has classified the information as "Mugbal (*i.e.*, restricted)." Kootz Decl. ¶ 27. However, the GSOIA clearly states that "Mugbal" is not akin to the Confidential, Secret, or Top Secret classifications. Instead, "Mugbal" refers to information that is "restricted or for official use only." Sinodis Decl. at Exh. F, GSOIA at 9.  Defendants inexplicably go even further than the Israeli government by completely restricting access to this information without any particularized rationale.[20]

DOS has previously released information, including agreements with other countries, that were designated as "Restricted" by the foreign country and as "For Official Use Only" or "FOUO" by the U.S.[21] In fact, DOS has published an agreement in its entirety between the U.S. and Israel that is labeled "For Official Use Only" and references the GSOIA in its preamble. *See* Agreement Between the Department of Defense of the United States of America and the

---

Archive (May 2, 2019), https://nsarchive.gwu.edu/briefing-book/nuclear-vault/2019-05-02/battle-letters-1963-john-f-kennedy-david-ben-gurion-levi-eshkol-us-inspections-dimona.

[20] According to DHS, "[i]nformation designated as FOUO is not automatically exempt from disclosure under the provisions of the Freedom of Information Act, 5 U.S.C. 552, (FOIA). Information requested by the public under a FOIA request must still be reviewed on a case-by-case basis." *See "*Department of Homeland Security, Management Directive System, MD Number: 11042.1, Safeguarding Sensitive But Unclassified (For Official Use Only) Information," at 4 (Jan. 6, 2005), https://www.dhs.gov/xlibrary/assets/foia/mgmt_directive_110421_safeguarding_sensitive_but_unclassified_information.pdf.

[21] *See e.g.*, "Memorandum of Understanding Between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the United States of America" (Mar. 9, 1990), https://2001-2009.state.gov/documents/organization/99364.pdf; "Untitled Agreement between the United States and UK," (Dec. 19, 2005), https://2001-2009.state.gov/documents/organization/94387.pdf; "Technical Agreement Between the United States Air Force and Japan Air Self-Defense Force and Japan Maritime Self-Defense Force," (18 Oct. 2004), https://2001-2009.state.gov/documents/organization/95904.pdf.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1   Ministry of Defense of the State of Israel for Research, Development, Test, and Evaluation

2   Projects (Sept. 13, 2006), https://2009-2017.state.gov/documents/organization/198374.pdf. This

3   "Research, Development, Test and Evaluation (RDT&E) Agreement" encompasses collaboration

4   between the two governments "to improve the defense capabilities of the Parties." *Id*. at 7.

5   Unlike the MOU at issue in this case, that agreement pertains directly to military information *and*

6   directly cites the GSOIA. Yet, DOS made it publicly accessible on its website. Defendants

7   cannot then seriously contend that Exemption 1 requires nondisclosure of the MOU on Israel's

8   obligations to provide reciprocal privileges to U.S. citizens under the VWP, which does not

9   concern military information or cite the GSOIA.

10          Furthermore, the Israeli government itself released information, via its official website,

11   regarding its entry procedures, which made clear that it intended to discriminate against

12   Palestinian Americans. Sinodis Decl. at Exh. L, Reciprocal privileges for US citizens at border

13   control. Indeed, both governments have revealed details of the agreement. *See infra* Sec. IV.

14   Even Israeli media claimed to have been provided a copy of the agreement.[22] It is therefore

15   incredulous to claim that Israel intended for the MOU to be kept confidential.

16          For these reasons, Defendants have failed to establish that the MOU can be classified

17   under E.O. 13526, and therefore they cannot withhold the record pursuant to FOIA Exemption 1.

18                      **2.   Section 1.4(d) regarding "Foreign Relations or Foreign
                              Activities" is inapplicable.**

19
20          Defendants similarly seek to withhold the MOU under Section 1.4(d). Defendants claim

21   that disclosure of the document's contents "would harm not only the bilateral relationship

22   between the United States and [Israel], but also the U.S. Government's foreign relations more

23   broadly," based on a broad assumption that foreign governments would no longer trust the U.S.

24   with sensitive information. Kootz Decl. ¶ 31. No further explanation has been provided.

25          Defendants fall well short of establishing that the MOU is classified by Section 1.4(d).

26   First, while DOS cited Section 1.4(d) to justify the vast majority of its Exemption 1

27   withholdings, DOS's declaration makes the same boilerplate assertion to justify many of them:

28
---
[22] *See supra* n.2; *see also"* Barak Ravid "U.S. and Israel agree on conditions that could see
Israelis join visa waiver program," Axɪos (July 19, 2023),
https://www.axios.com/2023/07/19/israel-visa-waiver-palestinian-americans-mou-us.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

20

that the withheld information is broadly sensitive, and that disclosure of this material might create distrust among governments. It is not explained in any particularity why the content of the MOU raises this concern other than a bare assertion that it might.

Courts have repeatedly condemned such categorical justifications where they make no effort to explain the contents of the withheld documents or "to tailor the explanation to the specific document withheld." *Wiener*, 943 F.2d at 979. *See also King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987) (finding "[c]ategorical description[s] of redacted material coupled with categorical indication of anticipated consequences of disclosure" was "clearly inadequate"); *Davin v. U.S. Dep't of Just.*, 60 F.3d 1043, 1050 (3d Cir. 1995) (finding categorical approach, without the inclusion of specific factual information that correlates the claimed exemptions to the withheld documents, insufficient); *Am. C.L. Union v. Off. of the Dir. of Nat'l Intel*, 2011 WL 5563520, *6 (S.D.N.Y. Nov. 15, 2011) ("By proffering conclusory and nearly identical justifications for the various NSD withholdings, the government appears to assume that *de novo* FOIA review requires little more than a judicial spell check").

Defendants' logic here is remarkably similar to that rejected by the Ninth Circuit in *Wiener*. There, the court rejected "broad explanations of alternative harms that might result from the release of the withheld information" as sufficient to justify invoking Section 1.4(d). *Wiener*, 943 F.2d at 982. The same sort of bare assertions of some vague harm are used by DOS here. Indeed, DOS makes explicit that it is basing its argument for Section 1.4(d)'s applicability on an *assumption* that disclosure would cause any and all foreign governments to stop trusting the U.S. Kootz Decl. ¶ 31. This assumption strains credulity given that the MOU's contents have been acknowledged and referenced by both the U.S. and Israel and that a version of the document in question has already been released to Israeli media and published online.

Second, DOS fails to explain why the disclosure of information purportedly subject to Section 1.4(d) would harm national security, as E.O. Section 1.1 requires. There is no presumption that disclosure of Section 1.4(d) information would harm national security. *See* E.O. 13526 1.1(d). DOS's boilerplate assertion that disclosure will "harm relations" between the US and Israel fails to provide an individualized explanation tied to each withholding. *Wiener*, 943 F.2d at 979. The Court must therefore reject DOS's attempt to withhold the MOU from Plaintiff.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1

### D.  DOS Failed to Reasonably Segregate Non-Exempt Information.

2      DOS's boilerplate statements that withheld information cannot be reasonably segregated

3  from non-exempt material are insufficient. The FOIA mandates that "[a]ny reasonably

4  segregable portion of a record shall be provided. . . after deletion of the portions which are

5  exempt." 5 U.S.C. § 552(b). "[A]n agency cannot justify withholding an entire document simply

6  by showing that it contains some exempt material." *Mead Data Cent., Inc. v. U.S. Dept. of Air*

7  *Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Where, as here, the *Vaughn* index provides only

8  "boilerplate segregability language without a 'detailed justification' for the withholding of the

9  portions of exempt records," it denies Plaintiff both "the opportunity to argue for [the

10  document's] release and the court the opportunity to consider the reasonableness of the

11  withholding." *Id*. DOS must also "document any inability on its part to parse the records, such

12  that incomplete segments of records would be rendered meaningless if disclosed." *Id*.

13      DOS's failure to segregate out non-exempt material is apparent in at least two respects.

14  First, DOS's *Vaughn* index does nothing to elucidate how the agency conducted its segregability

15  analysis, stating merely that "[t]he Department conducted a thorough review of the document

16  and determined that there is no meaningful, non-exempt information that may be reasonably

17  segregated and released." Sinodis Decl. at Exh. G, DOS *Vaughn* Index. Courts have rejected

18  such blanket assertions as to segregability, and the Court here cannot affirm DOS's categorical

19  conclusion without ensuring that it is actually true for each portion of the record at issue. *See,*

20  *e.g., Church of Scientology of Cal.*, 611 F.2d at 744 (court may not "simply approve the

21  withholding of an entire document without entering a finding on segregability"); *Nat. Res. Def.*

22  *Council, Inc. v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1106 (C.D. Cal. 2005) (denying

23  summary judgment for DOD where it appended a boilerplate statement that it disclosed all

24  "reasonably segregable information" to each document description in its *Vaughn* index).

25      Second, as explained *infra*, it is impossible that *all* the information within the thirteen-

26  page document is exempt from disclosure given that (1) Defendants and Israel have already

27  acknowledged the title of the document, (2) DOS and Israel have provided extensive details

28  regarding which U.S. citizens qualify for visa free travel to Israel, and (3) the Israeli government

1    has even identified the two government officials–Ambassadors Nides and Herzog–who signed

2    the MOU. *See* Section IV, *infra*.

3           Accordingly, at a minimum, the Court should review the thirteen-page document *in*

4    *camera* to determine both whether the information withheld is properly classified and whether

5    there are really no reasonably segregable non-exempt portions that can be released. *See Spirko v.*

6    *U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (in camera review needed "to make a

7    responsible...determination on the claims of exemption"); *Physicians for Hum. Rts. v. U.S. Dep't*

8    *of Def.*, 675 F. Supp. 2d 149, 172 (D.D.C. 2009) (same). Such review is particularly warranted

9    here because of the "strong public interest in disclosure" of information that will reveal that

10   Defendants permitted Israel to participate in the VWP despite its blatant discrimination against

11   Palestinian Americans and its violation of the "Blue is Blue" requirement.

12       **IV.    The Withheld Information Has Been Previously Disclosed or Is Otherwise
                  Known to the Public.**

13          Even if Exemption 1 did apply to the contested information, which it does not,

14   Defendants have disclosed identical information in the past and, thus, any alleged exemptions are

15   waived here. The "official acknowledgment" waiver provides that, when an agency has officially

16   acknowledged otherwise exempt information through prior disclosure, the agency has waived its

17   right to claim an exemption with respect to that information, *Poulsen v. Dep't of Def*, 373 F.

18   Supp. 3d 1249, 1267 (N.D. Cal. 2019), and its disclosure may be compelled irrespective of an

19   otherwise valid exemption claim. *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 378 (D.C. Cir.

20   2007) (quoting *Fitzgibbon v. Cent. Intel. Agency*, 911 F.2d 755, 765 (D.C. Cir. 1990)). The

21   official acknowledgment must meet three criteria: (1) the prior disclosure must match the

22   information requested; (2) the prior disclosure must be as specific as the information requested;

23   and (3) the information requested must already have been made public through an official and

24   documented disclosure. *Knight First Amend. Inst. at Columbia Univ. v. Cent. Intel. Agency*, 11

25   F.4th 810, 815 (D.C. Cir. 2021). Here, Plaintiff overwhelmingly satisfies its burden.

26          Defendants have made numerous statements officially acknowledging the MOU and its

27   contents, including:

28          The title of the document: In its declaration, DHS identifies the thirteen-page document

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

23

by name. Pavlik-Keenan Decl. ¶ 9. Additionally, on August 24, 2023, DOS officially disclosed the title of the thirteen-page document, stating, "On July 19, 2023, the United States and Israel signed a *Memorandum of Understanding on the Extension of Reciprocal Privileges and the Visa Waiver Program* (MOU on Reciprocity)." Sinodis Decl. at Exh. K, Israel's Commitments to Extend Reciprocal Privileges to All U.S. Citizens (emphasis added).

The parties who signed the document: On August 24, 2023, DOS officially acknowledged that the governments of the U.S. and Israel signed the thirteen-page document. Sinodis Decl. at Exh. K, Israel's Commitments to Extend Reciprocal Privileges to All U.S. Citizens. Prior to that, Israel had stated that "Ambassadors Nides and Herzog signed a reciprocity agreement, which will enable realizing Israel's acceptance into the US Visa Waiver Program (VWP)." *Id.* at Exh. I, Statement by National Security Advisor Tzachi Hanegbi on Israel's Participation in the US Visa Waiver Program.

The purpose of the document: On July 19, 2023, Israel stated that the "reciprocity agreement [] will enable realizing Israel's acceptance into the US Visa Waiver Program (VWP)." *Id.* That same day, DHS acknowledged "Israel's announcement that U.S. citizens will be allowed to travel to and through Israeli ports of entry open to tourist travel," and added that "[t]he United States will engage with the Government of Israel on its implementation of its new travel policies…in furtherance of our shared goal that Israel join the Visa Waiver Program." *Id.* at Exh. J, DHS Statement on Israel's Announcement Regarding Reciprocal Visa Acceptance for U.S. Citizens. Subsequently, on August 24, 2023, DOS further recognized that the signed document "details the steps Israel is committed to take to extend reciprocal privileges to all U.S. citizens and nationals traveling to or through Israel for short term travel for business, tourism, or transit as required for participation in the Visa Waiver Program." *Id.* at Exh. K, Israel's Commitments to Extend Reciprocal Privileges to All U.S. Citizens.

The document's contents: On August 24, 2023, DOS explained that "Israel made [a number of] commitments" when it signed the MOU. Sinodis Decl. at Exh. K, Israel's Commitments to Extend Reciprocal Privileges to All U.S. Citizens. DOS then detailed many of those "commitments." *Id.*; *see also* ECF 1 ¶ 27 (delineating the discriminatory terms of the MOU). Relevantly, on September 11, 2023, the Israeli government released a document

1    regarding its entry procedures for U.S. citizens, which corroborates much of the information that

2    DOS disclosed on August 24, 2023. Sinodis Decl. at Exh. L, Reciprocal privileges for US citizen

3    at border control. In particular, Israel's official publication defined who it considers to be a "US

4    citizen" and a "US citizen who is a resident of Gaza," and further outlined the "[p]rocedure for

5    handling US citizens" versus the "[p]rocedure for handling US citizens, who are also residents of

6    the Gaza Strip." *Id*.

7            As shown above, Defendants' statements easily meet the three prongs of the waiver test.

8    First, prior to Plaintiff's FOIA request, Defendants announced and thus acknowledged the

9    MOU's existence, including its actual title. Second, DOS explained that the governments of the

10   U.S. and Israel signed the MOU, and Israel even identified by name the two officials who signed

11   the MOU on Israel's behalf. Third, DOS disseminated the terms on which the governments of

12   the United States and Israel signed the MOU, which were subsequently corroborated by public

13   statements made by the government of Israel. Finally, Defendants' statements about the MOU

14   and Israel's two-tiered system for allowing certain U.S. citizens visa-free travel were an "official

15   and documented disclosure," *Fitzgibbon*, 911 F.2d at 765, made during an official press

16   conference and published via Defendants' own official websites.

17           Accordingly, even if Exemption 1 did require the nondisclosure of the MOU, the Court

18   should nonetheless find that Defendants have already officially acknowledged the existence and

19   terms of the document and compel Defendants to release it in full. There exists no legitimate

20   reason why the MOU should be withheld from Plaintiff, particularly when a copy of what is

21   believed to be an unsigned version of the MOU is available online. Sinodis Decl. at Exh. B,

22   Unsigned MOU.

23                                          **CONCLUSION**

24           For the aforementioned reasons, the Court should grant Plaintiff's Motion for Summary

25   Judgment and further grant Plaintiff declaratory and injunctive relief.

26   ////

27   ////

28   ////

1

Dated:  September 19, 2024                    Respectfully submitted,

2

Diala Shamas (admitted pro hac vice)          /s/ Johnny Sinodis

3

Center for Constitutional Rights              Marc Van Der Hout, Cal. Bar No. 80778

666 Broadway, 7th Floor                       Johnny Sinodis, Cal. Bar No. 290402

4

New York, NY 10012                            Christine Raymond (admitted pro hac vice)

(212) 614-6464                                Van Der Hout LLP

5

dshamas@ccrjustice.org                        360 Post Street, Suite 800

6                                             San Francisco, CA 94108

                                              (415) 981-3000

7                                             ndca@vblaw.com

8

Golnaz Fakhimi (admitted pro hac vice)        Amber Qureshi (admitted pro hac vice)

Muslim Advocates                              Matthew Vogel†(admitted pro hac vice)

9

1032 15th Street N.W. #362                    National Immigration Project

Washington, D.C. 20005                        1200 18th Street NW, Suite 700

10

(202) 655-2969                                Washington, DC 20036

11

golnaz@muslimadvocates.org                    (202) 470-2082

                                              amber@nipnlg.org

12

Christopher Godshall-Bennett (admitted        matt@nipnlg.org

pro hac vice)

13

American-Arab Anti-Discrimination

14

Committee

1705 DeSales Street, NW, Suite 500

15

Washington, D.C. 20036

16

(202) 244-2990

cgb@adc.org

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
26