1   ISMAIL J. RAMSEY (CABN 189820)
    United States Attorney
2   PAMELA T. JOHANN (CABN 145558)
    Chief, Civil Division
3   BENJAMIN J. WOLINSKY (CABN 305410)
    Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102-3495
        Telephone: (415) 436-7288
6       FAX: (415) 436-6996
        benjamin.wolinsky@usdoj.gov
7
    Attorneys for the United States of America
8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

13   VAN DER HOUT LLP,                    )   Case No. 3:24-cv-01095-JD
                                          )
          Plaintiff,                      )   **OPPOSITION TO PLAINTIFF'S MOTION FOR**
14                                        )   **SUMMARY JUDGMENT; CROSS-MOTION**
          v.                              )   **FOR SUMMARY JUDGMENT**
15                                        )
     U.S. DEPARTMENT OF HOMELAND          )   Date:       December 5, 2024
16   SECURITY and U.S. DEPARTMENT OF      )   Time:       10:00 a.m.
     STATE.,                              )   Location:   450 Golden Gate Avenue
17                                        )               San Francisco, CA 94102
          Defendants.                     )               Courtroom 11
18   _____)

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ..................................................1

RELIEF SOUGHT.................................................................................................................................1

ISSUES TO BE DECIDED ...................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................................1

I.      INTRODUCTION ...................................................................................................................1

II.     BACKGROUND .....................................................................................................................3

     A.      Plaintiff submits its first FOIA request. ......................................................................3

     B.      After filing this lawsuit, Plaintiff makes a second, much broader FOIA
         request. .........................................................................................................................6

III.    LEGAL STANDARD ..............................................................................................................7

IV.     ARGUMENT ...........................................................................................................................8

     A.      The agencies conducted a reasonable search. ..............................................................8

         1.      State made reasonable determinations about search locations. ...............................9

         2.      State made reasonable determinations about search terms. ....................................10

         3.      State made reasonable determinations about the search period...........................12

         4.      Homeland Security made reasonable determinations about search
            locations. ................................................................................................................13

         5.      Plaintiff's "burden shifting" argument has no legal basis. ....................................13

         6.      The remedies sought by Plaintiff are not justified by the agencies'
            response time. ..........................................................................................................14

     B.      The record was appropriately withheld under Exemption 1......................................14

         1.      The "violations of law" exception does not apply in this case. ..............................16

         2.      The agencies met all procedural requirements under E.O. 13,526. .......................17

         3.      The agencies met the substantive requirements of Exemption 1...........................18

            (i)     Plaintiff's arguments about Section 1.4(b) are unsupported by
                 both law and fact. ..........................................................................................19

            (ii)    Plaintiff's arguments about Section 1.4(d) are unsupported by
                 both law and fact. ..........................................................................................21

         4.      Plaintiff's argument about segregating information is a red herring. ....................22

5.      Plaintiff's argument for prior disclosure fails to meet the well-
        established test. ...................................................................................................23

V.      CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*ACLU v. DOD*,
  389 F. Supp. 2d 547 (S.D.N.Y. 2005) ............................................................................... 17

*ACLU v. DOD*,
  628 F.3d 612 .................................................................................................................... 19

*ACLU v. DOJ*,
  265 F. Supp. 2d 20 (D.D.C. 2003) .................................................................................... 21

*ACLU v. DOJ*,
  640 F. App'x 9 (D.C. Cir. 2016) ................................................................................. 3, 24

*Am. Ctr. for L. & Just. v. Dep't of State*,
  354 F. Supp. 3d 1 (D.D.C. 2018) ............................................................................ passim

*Am. Oversight v. DOJ*,
  401 F. Supp. 3d 16 (D.D.C. 2019) .................................................................................... 10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................................... 7, 8

*Anguiano v. ICE*,
  356 F. Supp. 3d 917 (N.D. Cal. 2018) .............................................................................. 11

*Animal Legal Def. Fund v. FDA*,
  836 F.3d 987 (9th Cir. 2016) .............................................................................................. 8

*Bassiouni v. CIA*,
  392 F.3d 244 (7th Cir. 2004) ............................................................................................ 25

*Billington v. DOJ*,
  11 F. Supp. 2d 45 (D.D.C. 1998), ..................................................................................... 17

*Canning v. Dep't of State*,
  134 F. Supp. 3d 490 (D.D.C. 2015) .................................................................................. 17

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................................... 8

*Citizens Comm'n on Human Rights v. Food & Drug Admin.*,
  45 F.3d 1325 (9th Cir. 1995) .............................................................................................. 8

*Competitive Enter. Inst. v. Dep't of Treasury*,
  319 F. Supp. 3d 410 (D.D.C. 2018) .................................................................................. 23

*Darui v. Dep't of State*,
   798 F. Supp. 2d 32 (D.D.C. 2011) ................................................................. 19

*DiBacco v. U.S. Army*,
   795 F.3d 178 (D.C. Cir. 2015) ..................................................................... 10

*Fitzgibbon v. CIA*,
   911 F.2d 755 (D.C. Cir. 1990) ..................................................................... 24

*Flight Safety Servs. Corp. v. Dep't of Lab.*,
   326 F.3d 607 (5th Cir. 2003) ....................................................................... 23

*Frugone v. CIA*,
   169 F.3d 772 (D.C. Cir. 1999) ..................................................................... 16

*Ground Saucer Watch v. CIA*,
   692 F.2d 770 (D.C. Cir. 1981) ....................................................................... 9

*Hamdan v. DOJ*,
   797 F.3d 759 (9th Cir. 2015) .................................................................... 8, 11

*Intell. Prop. Watch v. USTR*,
   205 F. Supp. 3d 334 (S.D.N.Y. 2016)............................................................ 21

*Inter-Coop. Exch. v. U.S. Dep't of Com.*,
   36 F.4th 905 (9th Cir. 2022) ....................................................................... 11

*Jud. Watch v. DOD*,
   715 F.3d 937 (D.C. Cir. 2013) ..................................................................... 15

*King v. DOJ*,
   830 F.2d 210 (D.C. Cir. 1987) ..................................................................... 15

*Lahr v. Nat'l Transp. Safety Bd.*,
   569 F.3d 964 (9th Cir. 2009) ......................................................................... 8

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009)................................................................. 11, 15

*Lechliter v. Rumsfeld*,
   182 F. App'x 113 (3d Cir. 2006) .................................................................. 13

*Long v. I.R.S.*,
   693 F.2d 907 (9th Cir. 1982) ....................................................................... 14

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ..................................................................... 23

*Mobley v. CIA*,
    806 F.3d 568 (D.C. Cir. 2015) ............................................................................. 2, 23

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) ............................................................................. 16

*Muttitt v. Dep't of State*,
    926 F. Supp. 2d 284 (D.D.C. 2013) ...................................................................... 21

*N.Y. Times v. CIA*,
    965 F.3d 109 (2d Cir. 2020) .................................................................................. 25

*Nat'l Pub. Radio, Inc. v. U.S. Cent. Command*,
    646 F. Supp. 3d 1245 (S.D. Cal. 2022) ................................................................ 14

*Nurse v. Sec'y of the Air Force*,
    231 F. Supp. 2d 323 (D.D.C. 2002) ...................................................................... 10

*Oglesby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ............................................................................. 8, 13

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,
    85 F. Supp. 3d 1074 (N.D. Cal. 2015) .................................................................. 14

*Priv. Info. Ctr. v. FBI*,
    No. 17-00121, 2018 WL 2324084 (D.D.C. May 22, 2018) ................................... 13

*Pub. Citizen v. Dep't of State*,
    11 F.3d 198 (D.C. Cir. 1993) ................................................................................ 24

*Rivera v. Phillip Morris, Inc.*,
    395 F.3d 1142 (9th Cir. 2005) ............................................................................. 7, 8

*Rosenberg v. DOD*,
    342 F. Supp. 3d 62 (D.D.C. 2018) .................................................................. 19, 20

*Sakamoto v. EPA*,
    443 F. Supp. 2d 1182 (N.D. Cal. 2006) ............................................................... 8, 9

*Students Against Genocide v. Dep't of State*,
    257 F.3d 828 (D.C. Cir. 2001) .............................................................................. 24

*Transgender Law Ctr. v. ICE*,
    46 F.4th 771 (9th Cir. 2022) ................................................................................ 2, 8

*Valencia-Lucana v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1998) .............................................................................. 13

*Wilbur v. CIA,*
  355 F.3d 675 (D.C. Cir. 2004) ........................................................................ 9

*Wilson v. DOJ,*
  No. 87-2415, 1991 WL 111457 (D.D.C. June 13, 1991) ................................. 16

*Wolf v. CIA,*
  473 F.3d 370 (D.C. Cir. 2007) ........................................................................ 3

*Zemansky v. EPA,*
  767 F.2d 569 (9th Cir. 1985) ....................................................................... 8, 9

**Statutes**

5 U.S.C. § 552(b)(1) ........................................................................................ 5

**Rules**

Fed. R. Civ. P. 56 ......................................................................................... 1, 7

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that on Thursday, December 5, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11, 19th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable James Donato, Defendants U.S. Department of State ("State") and U.S. Department of Homeland Security ("Homeland Security") shall and hereby do move that summary judgment be entered in their favor under Federal Rule of Civil Procedure 56.  That Motion is based on this notice, the attached memorandum of points and authorities, the pleadings, records and files in this action, any other matters of which the Court takes judicial notice, and such other written or oral argument as may be presented at or before the time the Motion is taken under submission by the Court.

**RELIEF SOUGHT**

State and Homeland Security seek entry of judgment in their favor.

**ISSUES TO BE DECIDED**

1.      Whether there is no genuine dispute of any material fact and the agencies are entitled to judgment as a matter of law regarding the adequacy of their searches in response to Plaintiff's FOIA request.

2.      Whether the agencies are entitled to summary judgment regarding their application of FOIA Exemption 1 to the sole record withheld as a result of those searches.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

This case involves a FOIA request for (i) a classified memorandum signed by Israel and the United States in July 2023; (ii) the version in effect two months later, when Israel joined the visa waiver program ("VWP"); and (iii) records reflecting any changes to it from then until the agencies' response. The agencies searched for responsive records and identified a single, thirteen-page document signed in July 2023.  This document was withheld in full under FOIA Exemption 1 because it is classified and deemed "Mugbal" (i.e. restricted) by Israel.  Plaintiff now moves for summary judgment, primarily

arguing that the searches were inadequate and that Exemption 1 does not apply. These arguments, however, are without merit.

First, the searches were adequate because they were "reasonably calculated to uncover all relevant documents." *See Transgender Law Ctr. v. ICE*, 46 F.4th 771, 779 (9th Cir. 2022) (internal citations omitted). Indeed, the searches led to a single record with no indication of later modifications. To the extent that Plaintiff now suggests additional records exist reflecting changes made by Israel to its own policies, this raises questions about the timing of Plaintiff's second FOIA request—filed during this lawsuit—which seeks such materials. But that second request is not at issue and cannot be litigated here.

Second, the record was properly withheld because Israel classified it as "Mugbal" (restricted). The United States is obligated to maintain the confidentiality of this record under its General Security of Information Agreement ("GSOIA") with Israel and Executive Order ("E.O.") 13,526. The declarations provide sufficient detail regarding the potential harm that would result from disclosing the record, and Plaintiff's contrary arguments are without support. *See Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) ("[T]he text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified."). Although Plaintiff questions the validity of the policies that may be described in the record, that does not negate the application of Exemption 1. *Cf. Am. Ctr. for L. & Just. v. Dep't of State*, 354 F. Supp. 3d 1, 13 (D.D.C. 2018) (noting that even if portions of a record were classified for an improper reason, it would still be covered by Exemption 1). FOIA is not an alternative vehicle to challenge policies outside its scope.

Third, the agencies were not obligated to isolate potentially non-exempt portions of the withheld record, as any such information is closely intertwined with the exempt subject matter. Even so, details such as the title, signatories, and general subject matter offer little substantive value. Nor is in camera review appropriate here. *Mobley v. CIA*, 806 F.3d 568, 588 (D.C. Cir. 2015) ("When an agency meets its burden through affidavits, in camera review is neither necessary nor appropriate, and in camera inspection is particularly a last resort in national security situations.") (internal citations omitted).

1     Lastly, the prior disclosure doctrine does not apply because no sufficiently-ranked official has

2 acknowledged the record's specific contents.  The *Fitzgibbon* test for prior disclosures is "quite strict,"

3 and "[p]rior disclosure of similar information does not suffice; instead, the specific information sought

4 by the plaintiff must already be in the public domain by official disclosure."  *ACLU v. DOJ*, 640 F.

5 App'x 9, 11 (D.C. Cir. 2016) (quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)).  Plaintiff has

6 failed to meet this standard, relying instead on vague references from public websites and media

7 sources.

8     The Court should therefore deny Plaintiff's motion and grant the agencies' cross-motion for

9 summary judgment in their favor.

10

11 **II.    BACKGROUND**

12     **A.    Plaintiff submits its first FOIA request.**

13     On October 27, 2023, Van Der Hout LLP ("Plaintiff" or "law firm") made a FOIA request to

14 State and Homeland Security seeking three specific types of record: (i) an MOU between the United

15 States and Israel regarding the "Extension of Reciprocal Privileges and the Visa Waiver Program,"

16 signed on July 19, 2023; (ii) the version of that MOU in effect on September 26, 2023—the date Israel

17 was officially designated under the VWP; and (iii) any records reflecting changes to the MOU from

18 September 26, 2023, through the date the FOIA request is fulfilled.  The text of third category focused

19 on changes to the MOU itself, and omitted anything about policy changes that Israel may have made

20 own its own, provided those changes did not alter the underlying document signed by each country.

21     On November 17, 2023, Homeland Security acknowledged receipt of the FOIA request via

22 email.  *See* Dkt. 1-1 at 10.  Still, the agencies' response was delayed.  On February 23, 2024, Plaintiff

23 filed this lawsuit.  *See generally* Dkt. 1.  Five days later, State acknowledged receipt of the FOIA request

24 and assigned it a case control number.  *See* Declaration of Timothy J. Kootz ("Kootz Decl.") ¶ 6

25 (attached as Exhibit A).  To identify responsive records, State and Homeland Security followed

26 established protocols.

27

28

OPP. TO MSJ; CROSS-MOTION FOR MSJ
3:24-cv-01095-JD

When conducting a FOIA search, State relies on the expertise of Information Program and Services ("IPS") specialists, as well as employees from each relevant bureau, office, or post.  *See* Kootz Decl. ¶ 10.  These employees are best positioned to identify likely record locations and determine the appropriate search terms because of their knowledge of how files are organized.  *Id.*

Here, IPS staff considered the responsibilities of various State components and the subject matter of Plaintiff's request, and determined that two sources were the most likely to hold responsive records. *Id.* ¶ 11.  These searches continued after service of the complaint.  *See id.* ¶¶ 6-7.  IPS concluded that no other components or systems were likely to contain responsive documents, and all relevant personnel searched the appropriate files.  *Id.* ¶ 11.

The first potential source of records was the Bureau of Near Eastern Affairs ("NEA").  NEA advises the Secretary of State on matters in North Africa and the Middle East, including regional policy issues like Iran, Iraq, Middle East peace, terrorism, and weapons of mass destruction.  Kootz Decl. ¶ 14. Upon review of the subject FOIA request, NEA determined that the office within NEA reasonably likely to contain responsive records was the Office of Israel and Palestinian Affairs ("NEA/IPA").  *Id.* ¶ 15.

To search NEA/IPA, a program assistant familiar with both the FOIA request and the bureau's record systems conducted a search on the NEA/IPA shared network drive.  *Id.* ¶ 16.  The assistant used the search terms "reciprocal privileges" and "visa waiver," and contained the search to records dated between July 19, 2023, and April 30, 2024 (depending on the sub-request).  *Id.*  No responsive records were found.  *Id.*

The second potential source of records was the eRecords Archive ("eRecords").  This system serves as the agency's central repository for storing permanent electronic records that have been transferred to the Bureau of Administration.  Kootz Decl. ¶ 12.  It includes various types of records such as correspondence, diplomatic notes, cables, and all emails sent or received on the "state.gov" network since January 1, 2017.  *Id.*  eRecords also contains digital records transferred from earlier years, including pre-2017 emails from certain former senior officials.  *Id.*  Every day, eRecords ingests over 4.5 million emails, performs on-the-fly deduplication, and adds these records to its historical archive, which already holds more than 2.8 billion emails.  *Id.*

To search eRecords, an IPS government information specialist, who was knowledgeable about both the FOIA request and the eRecords system, conducted a search on the Department's unclassified system using the combination of terms "MOU AND Israel AND Visa Waiver."  Kootz Decl. ¶ 13.  The search was contained to NEA records dated September 26, 2023, to April 30, 2024.  *Id.*  It located one responsive record.  *Id.*

In this case, the sole responsive record was reviewed by Timothy Kootz, Director of the Office of IPS, who determined that the information therein fell under FOIA Exemption 1 because it met the classification criteria of E.O. 13,526.[1]  Kootz Decl. ¶ 18.  "Exemption 1" states that FOIA does not apply to matters that are: "(A) Specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order…." 5 U.S.C. § 552(b)(1).  To be withheld under Exemption 1, pursuant to E.O. 13,526, information must meet all the requirements outlined in that order's section 1.1(a).[2]  *Id.*

Director Kootz determined that information in the record met not just one, but potentially two, such categories.  First, it fell under Section 1.4(b), which protects "foreign government information." The information was produced by both State and a foreign government, and it was governed by an existing international agreement—the General Security of Information Agreement ("GSOIA"), which "require[s] that the information, the arrangement, or both, are to be held in confidence."  Kootz Decl. ¶ 27.   The Israeli government classified the record at issue as "Mugbal" (i.e., restricted).  *Id.*  Second, some of the information was protected under Section 1.4(d), which covers information about "foreign

---

[1] Section 1.7(d) of E.O. 13,526 contemplates that, in certain situations, decisions to classify or reclassify information may be made after the information has been requested under FOIA.  In this case, pursuant to the provisions of Section 1.7(d), on May 17, 2024, Director Kootz classified as "Confidential//Foreign Government Information //Modified Handling Authorized" certain information in the one record at issue in this case, which was previously unclassified.

[2] Specifically, "(1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the United States Government; (3) the information falls within one or more of the categories listed in section 1.4 of [E.O. 13526]; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage."

relations or foreign activities of the United States." *Id.* ¶ 31.  This applies because the relevant foreign government information is protected by that foreign government.  *Id.*  Release of the information could harm not only the bilateral relationship but also the broader foreign relations of the United States.  *Id.*

Homeland Security conducted its own search, outlined in the declaration of Catarina Pavlik-Keenan, Deputy Chief FOIA Officer for the Privacy Office.  *See* Declaration of Catarina Pavlik-Keenan ("Pavlik-Keenan Decl.") (attached as Exhibit B).  After receiving the request, Homeland Security's Office of Policy identified the MOU responsive to the first two subparts (a and b).  *Id.* ¶ 13.  The Office of Policy found no records of changes between September 26, 2023, and the date of the request, so no documents were identified for subpart (c).  *Id.*  On December 15, 2023, the Office of Policy forwarded its search results to the Privacy Office.  *Id.* ¶ 14.  After reviewing the MOU and consulting with the Office of Policy, the Privacy Office determined that referral to State was appropriate, as State implements and monitors compliance with international MOUs.  *Id.* ¶ 15.

**B.**      **After filing this lawsuit, Plaintiff makes a second, much broader FOIA request.**

One day before the agencies were due to respond to the complaint, Plaintiff made a second FOIA request.  *See* Declaration of George M. Mackie ("Mackie Decl.") (attached as Exhibit C).  While this request sought the same MOU, it expanded the scope significantly by including new, much broader categories.  For instance, the second request sought information "associated with" or "connected to" the MOU, as well as any "updates" received by the United States regarding Israel's entry policies.  A side-by-side comparison clearly illustrates the difference in scope between the first FOIA request (the subject of this lawsuit) and the second (which is not):

| First FOIA Request[3]<br>(October 27, 2023) | Second FOIA Request<br>(April 16, 2024) |
|---|---|
| 1. **The MOU** signed by Homeland Security, State. and the government of Israel on July 19, 2023…<br><br>2. **The MOU** signed by OHS, State, and the government of Israel which was in existence on September 26. 2023 - the date Israel was formally designated into the VWP. | Any records **associated with** and/or **connected to** the MOU signed…on July 19, 2023…including:<br><br>a.  Any updates, amendments, addendums or additions to the MOU; |

---

[3] Emphasis in this table is added.

OPP. TO MSJ; CROSS-MOTION FOR MSJ
3:24-cv-01095-JD

| 3. Any **records**, documents, or information **reflecting changes** to the MOU between September 26, 2023, through the date of fulfillment of this FOIA request...[4] | b. Any and all agreements between the U.S. government and the government of Israel **related to** the MOU and/or Israel's designation into the Visa Waiver Program, whether formal or informal, including agreements made over email or paper documents; and |
| | c. Any and all "updates" the U.S. government received (including Homeland Security and/or State) **regarding** Israel's entry policies, including but not limited to those mentioned in the September 2023 press release from the Department of State... |

On May 22, 2024, the agencies provided two letters to Plaintiff regarding their searches for information responsive to the FOIA request. Homeland Security informed Plaintiff that it had located 13 pages of records responsive to parts (a) and (b) of the request, but noted that these records fell under the purview of State. As a result, Homeland Security transferred the pages to State for further processing and direct response to Plaintiff. Homeland Security also stated that no responsive records were found for part (c) of the request. The response to the second FOIA request is being handled separately from this action.

## III.    LEGAL STANDARD

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c). A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party. *Anderson*, 477 U.S. at 248; *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). A dispute is material only if it could

---

[4] Although not included in the individual document descriptions, the first FOIA request defined "records" to include a variety of media such as "correspondence, directives, data" and others. Similarly, the introduction to the first FOIA request uses the word "relating," though it is absent from the "Request for Information" itself.

1  affect the outcome of the suit parties will not defeat an otherwise properly supported motion for

2  summary judgment.  *See Anderson*, 477 U.S. at 248.  Thus, summary judgment is appropriate if a

3  rational trier of fact, viewing the record as a whole, could not find in favor of the party opposing the

4  motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Courts have

5  recognized summary judgment as a proper avenue for resolving a FOIA claim.  *See Sakamoto v. EPA*,

6  443 F. Supp. 2d 1182, 1188 (N.D. Cal. 2006).  Most FOIA cases are resolved on summary judgment.

7  *Animal Legal Def. Fund v. FDA.*, 836 F.3d 987, 988 (9th Cir. 2016) (per curiam).

8  **IV.   ARGUMENT**

9        The agencies are entitled to summary judgment because their searches, conducted in accordance

10  with established policies, were reasonable given the scope of Plaintiff's first FOIA request.  These

11  searches also produced the responsive record, which was properly withheld under FOIA Exemption 1

12  for two independent and sufficient grounds.

13        **A.    The agencies conducted a reasonable search.**

14        An agency's search for records is "adequate" if it "was 'reasonably calculated to uncover all

15  relevant documents.'"  *Transgender Law Ctr. v. ICE*, 46 F.4th 771, 779 (9th Cir. 2022); *see also*

16  *Hamdan v. DOJ*, 797 F.3d 759, 770-72 (9th Cir. 2015) (affirming summary judgment for the

17  Government on the "adequacy of the searches" where the search was "reasonably calculated to locate

18  responsive records" and "a reasonable search is what [the plaintiffs] got…").  The issue "is not whether

19  there might exist any other documents possibly responsive to the request, but rather whether the search

20  for those documents was adequate."  *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45

21  F.3d 1325, 1328 (9th Cir. 1995) (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)); *see also*

22  *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 987 (9th Cir. 2009) (mere "speculat[ion] that the

23  agencies have retained records of the data points used to create the various charts" is insufficient to find

24  the agency's search for such records inadequate).  An agency need not conduct an exhaustive search of

25  every record system, but it must perform a good-faith, reasonable search of those record systems most

26  likely to contain the requested records.  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

27

28

The agency may simply submit a reasonably detailed, non-conclusory affidavit that describes its efforts and outlines its search procedures. *Zemansky*, 767 F.2d at 573. "Agency affidavits enjoy a presumption of good faith," which a plaintiff must rebut. *See Ground Saucer Watch v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). An agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam).

As detailed below, State and Homeland Security each submitted declarations outlining reasonable search choices in response to the documents sought by the first FOIA request.

### 1.    State made reasonable determinations about search locations.

Plaintiff's main argument centers on State's declaration. Specifically, Plaintiff challenges the agency's decision to focus on its eRecords Archive and the Bureau of Near Eastern Affairs' Office of Israel and Palestinian Affairs ("NEA/IPA"). *See* Plaintiff's Motion for Summary Judgment (Dkt. 41) 8 ("MSJ"). Plaintiff asserts that the declaration "sheds no light" on whether the agency searched "key public-facing" custodians, and proceeds to namecheck deputies and assistant secretaries who, in Plaintiff's view, should have been confirmed in the declaration "at a minimum." *Id.* The brief makes similar claims about the U.S. Embassy in Israel and the Bureau of Consular Affairs, arguing that the Bureau's role is "obviously relevant" because a government website notes that BCA "help[s] U.S. citizens connect with the world by issuing millions of U.S. passports each year." MSJ 10. These arguments find no support in law (section II.A cites none) or reason.

First, the agency conducted a reasonable search given the scope of the first FOIA request. IPS made a logical decision to search the locations (NEA/IPA) and the database most likely to contain responsive records. *See Sakamoto v. EPA*, 443 F. Supp. 2d 1182, 1198-99 (N.D. Cal. 2006) (the agency's search within one region adequate when the agency "reasonably concluded" that responsive documents would "most likely" be there). Notably, the eRecords Archive is not a typical database; it is the central repository containing over 2.8 billion emails. The search did in fact return the record at issue in the first FOIA request. Even so, "adequacy – not perfection – is the standard that FOIA sets," and

1   agencies "need not knock down every search design advanced by every requester." *DiBacco v. U.S.*

2   *Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) ("The Army's burden was to show that its search efforts were

3   reasonable and logically organized to uncover relevant documents; it need not knock down every search

4   design advanced by every requester.") (internal citations omitted).  The search was demonstrably

5   reasonable and, in addition, effective at producing the record at issue in the first FOIA request.

6   Second, none of the individuals or offices that Plaintiff now calls "key" were identified in its

7   FOIA request. In light of this irony, Plaintiff has no legitimate basis to challenge the agency's

8   declaration. *See Am. Oversight v. DOJ*, 401 F. Supp. 3d 16, 30-31 (D.D.C. 2019) (finding that Plaintiff

9   did not identify additional custodians to be searched and noting that "simply claiming that it is 'common

10  sense' and 'commonplace knowledge' that records would likely exist elsewhere…is far from the

11  specific evidence that is usually required to overcome an agency's representations.").  To the contrary,

12  courts have long held that an agency's FOIA staff is not required to possess "clairvoyant capabilities" in

13  determining the requester's needs. *Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d 323, 330 (D.D.C.

14  2002) (agency is not required to possess "clairvoyant capabilities") (internal citations omitted).

15  At bottom, because the agency conducted a reasonable search given the scope of the first FOIA

16  request, Plaintiff lacks a basis to now compel further searches. *Cf.  Kowalczyk v. DOJ*, 73 F.3d 386,

17  388-89 (D.C. Cir. 1996) (finding search limited to headquarters' files was reasonable because plaintiff

18  sent request there and request's description of records did not alert agency that he sought records from

19  field office).

20           **2.        State made reasonable determinations about search terms.**

21  Plaintiff also criticizes the agency's choice of search terms.  According to Plaintiff, State should

22  have broadened its search terms to include terms such as "Blue is Blue" and "potentially other words."

23  MSJ 10.  Plaintiff raises similar objections regarding the eRecords Archive, disputing the use of the

24  search terms "MOU" and "Israel" in combination with "Visa Waiver," despite the fact that this language

25  was explicitly derived from—and used in virtually every subcategory of—Plaintiff's records request.

26  *Id.*

27

28

OPP. TO MSJ; CROSS-MOTION FOR MSJ
3:24-cv-01095-JD

1    The agency employed reasonable and adequate search terms, considering the nature of the first

2    FOIA request—the only request at issue in this litigation.  Although the Court must construe facts in the

3    light most favorable to the requester, the adequacy of a search is ultimately assessed under a "standard

4    of reasonableness."  *See Inter-Coop. Exch. v. U.S. Dep't of Com.*, 36 F.4th 905, 911 (9th Cir. 2022).

5    While the government's discretion is not unlimited, the Ninth Circuit has recognized that government

6    agencies are generally in the best position to select search terms, given their "unique knowledge of the

7    manner in which they keep their own files and the vocabulary they use."  *Id.* at 911 (citing *Anguiano v.*

8    *ICE*, 356 F. Supp. 3d 917, 921 (N.D. Cal. 2018)).  For this reason, courts nationwide have upheld

9    searches as reasonable when, among other things, they are based on a reasonable interpretation of the

10   scope of the subject matter of the request.  *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009)

11   (affirming adequacy of search based on agency's reasonable determination regarding records being

12   requested and searched for accordingly).  The same conclusion is warranted here.

13   The agency's choice of search terms was reasonable, as the first FOIA request specifically

14   sought MOUs themselves and any existing records "reflecting changes."  Terms like "MOU" and

15   "Israel" were therefore appropriate to "uncover all relevant documents," given the highly targeted nature

16   of the request.  Since two-thirds of the first FOIA request explicitly sought individual MOUs, and the

17   remainder implicitly assumed that changes occurred after implementation, the search terms used were

18   entirely appropriate.  They were at least reasonable.  *See Hamdan v. DOJ*, 797 F.3d 759. 772 (9th Cir.

19   2015) (FOIA requestors are only "entitled to a reasonable search for records, not a perfect one.").  That

20   is even more true given that the first FOIA request omitted broad terms like "related to," "associated

21   with," or "connected to," which were only introduced in the second FOIA request made after this

22   lawsuit commenced.  But those, later submitted requests are not at issue here.

23   Plaintiff's reliance on *Inter-Coop. Exch.* is similarly misplaced.  In that case, a crab fishing

24   cooperative submitted a FOIA request for: (i) "[a]ll correspondence" among certain government officials

25   about arbitration system standards or about a recent Alaska minimum wage increase; and (ii)  all

26   documents "relating" to the interpretation of that arbitration system or the minimum wage increase.  36

27   F.4th at 909.  The agency conducted the search using essentially two terms: "arbitration" and "crab."  *Id.*

28

OPP. TO MSJ; CROSS-MOTION FOR MSJ
3:24-cv-01095-JD

at 911.  Neither could reasonably catch records related to a minimum wage increase—half the entire FOIA request.  So the Ninth Circuit found the search to be too narrow.  *Id.* at 913.  But that is not the case here.  In this matter, search terms like "MOU" and "Israel" directly address each of the three categories.  Further, Plaintiff's first FOIA request did not seek broad categories of documents "related to," "connected to," or "associated with" an MOU.  Those expansive terms debuted in the second FOIA request after Plaintiff filed its lawsuit.  *Inter-Coop. Exch.* is not analogous.

And, again, terms like "Blue is Blue" are nowhere to be found in the first FOIA request.  Rather, "MOU" and "Israel" appear in all three subparts of the request, with two of those subparts specifically seeking an MOU.  Plaintiff cannot omit terms from its own request and then fault the agency for failing to guess correctly.  *Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d at 330.  The search terms used here were sufficient to produce a responsive record that matched the length and nature of what was requested. Plaintiff's attempt to introduce extraneous language, such as "Blue is Blue," is baseless and raises questions about the purpose of submitting another FOIA request in the middle of this lawsuit.

### 3.    State made reasonable determinations about the search period.

Plaintiff next takes issue with eArchive search and the date range "from September 26, 2023, to April 30, 2024."  Plaintiff contends that "[n]o reason is given as to why the beginning date was not July 19, 2023 (when the MOU was signed) or earlier…"  MSJ 11.

The answer lies in Plaintiff's own FOIA request.  In it, Plaintiff sought: an original MOU; the version in effect on September 26, 2023; and "[a]ny records, documents, or information reflecting changes to the MOU between September 26, 2023, through the date of fulfillment of this FOIA request." The first two subparts each sought a single record.  That record was located, satisfying the first subpart. The government also confirmed that there was "no record of changes," which addressed the second subpart.  This leaves only the third subpart, which, by Plaintiff's own terms, sought records from after "September 26, 2023."  The timeline used here is straightforward: it reflects exactly what Plaintiff asked for in its first FOIA request.

### 4. Homeland Security made reasonable determinations about search locations.

Plaintiff takes issue with the agency's decision not to search sprawling sub-components such as "U.S. Customs and Border Protection (CBP)" and loosely defined management tiers such as "any individuals within CBP leadership" or "other custodians despite CBP being explicitly connected to the VWP." MSJ 12.

FOIA does not mandate an exhaustive search of all components within an agency. Rather, it is well established that a search is considered reasonable if it targets the limited number of locations most likely to contain responsive records. *See Lechliter v. Rumsfeld*, 182 F. App'x 113, 115-16 (3d Cir. 2006) (holding that the agency met its duty to conduct a reasonable search when it searched two offices that it "determined to be the only ones likely to possess responsive documents") (citing *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also Elec. Priv. Info. Ctr. v. FBI*, No. 17-00121, 2018 WL 2324084, at *3 (D.D.C. May 22, 2018) (finding the search adequate where, based on consultation with subject-matter experts, the agency searched the location where responsive records were likely stored).

That principle applies here. Plaintiff requested two specific MOUs and any records reflecting changes to those documents. In response, Homeland Security and the Office of Policy identified the responsive MOU and confirmed there were no records of changes that would trigger the third category of documents requested. Plaintiff points to no legal precedent that would require more extensive searches under these circumstances. Given the clear language of Plaintiff's initial FOIA request—seeking two specific MOUs and any records showing updates—it is difficult to envision how additional responsive documents could even exist.

### 5. Plaintiff's "burden shifting" argument has no legal basis.

Plaintiff ends its argument about search adequacy by alluding to a burden shifting scheme. Plaintiff asserts—without examples—that it presented "positive indications of overlooked materials" that "shift[s] the summary judgment burden to Defendants to justify its search." MSJ 12-13 (citing *Valencia-Lucana v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1998)). That is incorrect. *Valencia-Lucana* held that the agency bears the burden at summary judgment to demonstrate compliance with the

statute, and the court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* at 327 (citations omitted). That is what happened here. Plaintiff requested an MOU and any updated versions, along with records reflecting those changes. Homeland Security and State responded by delegating the searches to the appropriate offices, which located the responsive record. Plaintiff's collection of out-of-context media quotes and fragments from public websites does not change that fact.

### 6. The remedies sought by Plaintiff are not justified by the agencies' response time.

Plaintiff also argues that the agencies "failed to render 'prompt' determinations" and therefore it is entitled to summary judgment on those grounds. MSJ 6-7.

A technical violation of the FOIA deadlines alone does not warrant declaratory relief; rather, that is more often appropriate for ongoing violations of time limits, *see Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982), or where an agency "has repeatedly and substantially violated the time limits, and it is possible the violations will recur with respect to the same requesters." *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015). Plaintiff has not asserted a "pattern and practice" claim in this action, *see generally* Dkt. No. 1, and it has neither established repeated violations nor reason to believe future requests will go without response. *See Nat'l Pub. Radio, Inc. v. U.S. Cent. Command*, 646 F. Supp. 3d 1245, 1257–58 (S.D. Cal. 2022), *rev'd in part on other grounds*, 2024 WL 3066048 (9th Cir. 2024). The timeliness argument is no basis to grant the relief sought.

### B. The record was appropriately withheld under Exemption 1.

An agency can show it has properly withheld information under Exemption 1 by adhering to the classification requirements in E.O. 13,526, the current Executive Order governing the classification of national security information. Section 1.1 of that Order outlines the criteria for classifying national security information:

> (1) an original classification authority classifies the information;
> (2) the U.S. Government owns, produces, or controls the information;
> (3) the information is within one of eight protected categories listed in section 1.4 of the

Order;[5] and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in a specified level of damage to the national security, and the original classification authority is able to identify or describe the damages.

E.O. 13,526 § 1.1(a).

The agencies have met all four criteria.  First, Israel classified the record at issue as "Mugbal" (i.e. restricted).  *See* Kootz Decl. ¶ 27.  Second, in coordination with Israel, the U.S. Government owns, controls, and produced the information in the record.  *Id.*.  Third, the information falls under not just one, but potentially two protected categories listed in E.O. 13,526.  Section 1.4(b) applies because the information was produced by both the United States and a foreign government, and it is governed by an existing international agreement—the General Security of Information Agreement ("GSOIA")—which "require[s] that the information, the arrangement, or both, are to be held in confidence"; it is also classified as "Mugbal."  *Id.* ¶¶ 25-29.  Section 1.4(d) applies because the information pertains to "foreign relations or foreign activities of the United States."  *Id.* ¶¶ 30-31.  Fourth, unauthorized disclosure of the information could reasonably be expected to cause a specified level of damage because it concerns matters a foreign ally explicitly designated as restricted.  *Id.* ¶ 31.

The Kootz declaration meets the requirements for Exemption 1.  "Agencies may establish the applicability of Exemption 1 by affidavit (or declaration)."  *Jud. Watch v. DOD*, 715 F.3d 937, 940 (D.C. Cir. 2013).  Courts give "substantial weight" to agency affidavits concerning classified information.  *King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987).  Courts should also defer to the expertise of agencies involved in national security and foreign policy, especially regarding their articulations and predictive judgments on potential harm to national security.  *See, e.g., Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (courts have "consistently deferred to executive affidavits predicting harm to national

---

[5] Those categories are: "(a) military plans, weapons systems, or operations; (b) foreign government information; (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology; (d) foreign relations or foreign activities of the United States, including confidential sources; (e) scientific, technological, or economic matters relating to . . . national security; (f) United States Government programs for safeguarding nuclear materials or facilities; (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to . . . national security; or (h) the development, production, or use of weapons of mass destruction." E.O. 13,526 § 1.4(a)-(h), 75 Fed. Reg. 707, 709 (Dec. 29, 2009).

1   security, and have found it unwise to undertake searching judicial review"); *Frugone v. CIA*, 169 F.3d

2   772, 775 (D.C. Cir. 1999) ("[M]indful that courts have little expertise in either international diplomacy

3   or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable

4   concerns [regarding harm that disclosure could cause to national security]"); *see also Ancient Coin*

5   *Collectors Guild v. Dep't of State*, 673 F. Supp. 2d 1, 4 (D.D.C. 2009), *aff'd in relevant part, rev'd in*

6   *part*, 641 F.3d 504 (D.C. Cir. 2011) (upholding Exemption 1 withholding where the declaration

7   explained that disclosure of confidential communications would harm foreign policy and damage the

8   U.S. government's ability to conduct successful negotiations).  Thus, "the text of Exemption 1 itself

9   suggests that little proof or explanation is required beyond a plausible assertion that information is

10  properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) (emphasis added).

11      Plaintiff's arguments to the contrary lack a basis in law or fact.  They are addressed, in turn,

12  below.

### 1. The "violations of law" exception does not apply in this case.

14      Plaintiff's main argument hinges on a rarely cited provision further down in E.O. 13,526.

15  Section 1.7(a)(1) states that information may not be classified "in order to"—that is, for the purpose

16  of—concealing "violations of law, inefficiency, or administrative error."  Here, the law firm contends

17  that State's declaration "fails to state that Defendant [State] *did not* withhold this document to conceal

18  illegal activity," and thus "raise[s] concern" that such a violation *may have* occurred." MSJ 15

19  (emphasis added).  The MSJ cites no binding law for this "does not *not* say" theory.  There is a reason

20  for that.

21      First, even if Section 1.7(a)(1) applied here (and it does not) that would be irrelevant because the

22  exemption is otherwise justified. *Cf. Am. Ctr. for L. & Just. v. Dep't of State*, 354 F. Supp. 3d 1, 13

23  (D.D.C. 2018) ("Even if certain portions could be considered [as falling under Section 1.7(a)(2) as

24  "embarrassing" to the agency], 'it would nonetheless be covered by Exemption 1'" because

25  "independent of any desire to avoid embarrassment, the information [was] properly classified") (quoting

26  *Wilson v. DOJ*, No. 87-2415, 1991 WL 111457, at *2 (D.D.C. June 13, 1991)); *see also Billington*, 11 F.

27  Supp. 2d at 58 (rejecting plaintiff's argument that information was classified by FBI to shield agency

28

1    and foreign government from embarrassment).  Because the record here plainly involves matters of

2    foreign relations made under an existing security agreement, and is properly exempted, section 1.7 is a

3    non-issue

4        Unsurprisingly, courts have also addressed arguments like Plaintiff's (based on circumstantial

5    accounts) and squarely rejected them.  *See, e.g.*, *Billington v. DOJ*, 11 F. Supp. 2d 45, 59 (D.D.C. 1998),

6    *rev'd in part on other grounds*, 233 F.3d 81 (D.C. Cir. 2000).  In *Billington*, the plaintiff submitted

7    various FOIA requests to the FBI.  *Id.* at 52.  After filing suit, Plaintiff argued that information withheld

8    under Exemption 1 (under E.O. 13,526's predecessor) should have been released because circumstantial

9    evidence suggested that it had been classified in order to either shield the FBI and a foreign government

10   from embarrassment; or to conceal efforts to suppress First Amendment rights.  *Id.* at 58.  In support, the

11   plaintiff also pointed to confirmed and alleged misconduct by various agencies and officials in the past.

12   *Id.*  But the district court rejected these claims, and refused to "entertain" what amounted to

13   "unsubstantiated accusations by inferring, without substantive proof."  *Id.* at 59.

14       This case is like *Billington*.  Conclusory allegations that "[State] plainly aims to shield officials

15   from…revealing violations of law" amount to nothing more than an unsupported assertion.  The lone

16   case cited in this section of Plaintiff's MSJ implicitly acknowledges that FOIA is not intended to serve

17   as a backdoor for litigating such matters.  *See ACLU v. DOD*, 389 F. Supp. 2d 547, 564 (S.D.N.Y. 2005)

18   ("[T]here is nothing to show the court that might allow me to arrive at my own conclusions").  Contrary

19   to Plaintiff's expectations, FOIA is not a catch-all for litigating issues beyond its intended scope.

20                      **2.    The agencies met all procedural requirements under E.O. 13,526.**

21       Next, Plaintiff takes issue with the fact that State's declaration is signed by Director Kootz.

22   Specifically, that the classification was allegedly not done by a person (i.e. himself) "authorized to make

23   such classifications."  MSJ 16.  Although Plaintiff cites *Canning v. Dep't of State*, 134 F. Supp. 3d 490,

24   507 (D.D.C. 2015), it does not provide further explanation of that case.  *Id.*  Presumably, Plaintiff is

25   relying on Mr. Kootz not explicitly using the title of "agency head, the deputy agency head, or the senior

26   agency official designated under [the E.O.]" as a technical win of some sort.

27

28

OPP. TO MSJ; CROSS-MOTION FOR MSJ
3:24-cv-01095-JD

The argument is baseless.  Director Kootz explicitly stated in his declaration that "Section 1.7(d)" contemplates certain classifications after a request is made, and that he "properly classified" the one record at issue.  In other words, he fully complied with the section referenced in the preceding sentence, which requires both the appropriate designation and a memorandum for review by the named officials.  Moreover, Director Kootz has submitted a supplementary declaration with this brief that reaffirms this point.  *See* Supplemental Declaration of Timothy Kootz (attached as Exhibit D).  The issue is moot.

### 3.    The agencies met the substantive requirements of Exemption 1.

Exemption 1 applies to the record in this case.  First, it falls under Section 1.4(b), which protects "foreign government information."  The information was produced by both State and a foreign government, and is governed by an existing international agreement—the General Security of Information Agreement ("GSOIA")—which "require[s] that the information, the arrangement, or both, are to be held in confidence."  The Israeli government classified the record as "Mugbal" (i.e., restricted).  Second, the information is protected under Section 1.4(d), which applies to information about "foreign relations or foreign activities of the United States."  This protection applies because the relevant foreign government information is classified by that foreign government, and its release could harm not only the bilateral relationship but also broader U.S. foreign relations.  Plaintiff's arguments to the contrary lack any basis in law or fact.  Although the agency properly invoked both sections 1.4(b) and 1.4(d), it was required to do so with respect to only one.  *See Am. Ctr. for L. & Just. v. Dep't of State*, 354 F. Supp. 3d 1, 11 (D.D.C. 2018) (finding that it is "enough that the agencies satisfy only the requirements of 1.4(b) or 1.4(d)…[even if] they plainly satisfy both.")

### (i)    Plaintiff's arguments about Section 1.4(b) are unsupported by both law and fact.

Plaintiff makes several claims about the agencies' application of section 1.4(b), which exempts disclosure of foreign government information.  Most rely on speculative references to Israel's "official website" or its "media," which have supposedly alluded to a general agreement between Israel and the United States or discussed visa entry requirements more broadly.  *See* MSJ 20.  The remaining

1    arguments stretch case law and international agreements beyond reasonable interpretation.  However,

2    each fails under scrutiny.

3        First, Plaintiff argues that this case "diverges" from *Darui v. Dep't of State*, 798 F. Supp. 2d 32

4    (D.D.C. 2011).  Any divergence is irrelevant.  *Darui* is a FOIA case where application of Exemption 1

5    was *upheld*.  Finding that declaration sufficient does not impose a more exacting standard here.  Rather,

6    the standard remains the same: to show that the material was properly classified under § 1.4(b) and §

7    1.4(d) — and thus properly withheld — the agency's declaration "need only be plausible and logical to

8    justify the invocation of a FOIA exemption in the national security context."  *Am. Ctr. for L. & Just. v.*

9    *Dep't of State*, 354 F. Supp. 3d 1, 10-11 (D.D.C. 2018) (citing *ACLU v. DOD*, 628 F.3d 612 (D.D.C.

10   2011)).  As explained above, that is so because the Kootz declaration confirms the Mugbal

11   classification, connection to the GSOIA, and related concerns for international comity.  *Darui* would

12   require nothing more.

13       Second, Plaintiff accuses the agencies of "fail[ing] to show either that the MOU was signed by

14   Israel with the expectation that its contents would be held in confidence."  Plaintiff then cites *Rosenberg*

15   *v. DOD*, 342 F. Supp. 3d 62, 88-9 (D.D.C. 2018), apparently for the proposition that a declaration must

16   use the magic words "to be held in confidence."  Not so.  *Rosenberg* involved a withholding where the

17   declaration apparently said nothing about the foreign government's view of the information.  *Id.* at 88.

18   Put differently, the facts described in *Rosenberg* suggest no foreign government had said anything.  This

19   situation is different.  Here, Israel told the United States that the record is "Mugbal," i.e. restricted.

20       Third, Plaintiff argues that State "fail[s] to show how the GSOIA applies in this case" because

21   "[p]erhaps inadvertently, Defendants leave out that the GSOIA references military information."  MSJ

22   18.  What's meant by "references military information" is unclear.  The United Nations Treaty Series

23   added an *unofficial* title to this agreement, which is what Plaintiff appears to reference, but to be clear,

24   the word "military" does not appear a single time in the title or body of the agreement.  The acronym

25   "GSOIA" stands for "General Security of Information Agreement."  *See* MSJ, Ex. F, p. 4.  Again, the

26   term "military" appears nowhere in that title or, indeed, the entire agreement.  Rather, the first

27   substantive paragraph makes clear that the agreement governs "*classified information* communicated

28

1  directly or indirectly between our two governments…"  Here, the record falls squarely within the

2  GSOIA because it was, indeed, classified: as "Mugbal" (i.e. restricted).  The GSOIA plainly applies and

3  reading in a "military" purpose is baseless.

4      Fourth, Plaintiff argues that Section 1.2 of the Order "contains three classifications: Top Secret,

5  Secret, and Confidential" and that "Mugbal' is not comparable to "Confidential."  However, Plaintiff

6  omits that: to start, the GSOIA itself clarifies that "[t]he types of information designated by the

7  Government of Israel to which the arrangements would apply are all information furnished by the

8  Government of Israel and classified "Mugbal', . . . " MSJ, Ex. F, p. 10; and, what's more, E.O. 13,526

9  section 6.1(s)(1) states that "foreign government information" means "information provided to the

10  United States Government by a foreign government . . . with the expectation that the information, the

11  source of the information, or both, are to be held in confidence."  Here, the GSOIA establishes that

12  Israel shares information classified as "Mugbal" with the U.S. Government on the express expectation

13  that such information will be held in confidence.  Plaintiff is correct that "Mugbal" is not the direct

14  equivalent to the usual standards for the U.S. classification level "Confidential," but this is immaterial in

15  light of E.O. 13526 Section 4.1(h), which states: "an agency shall safeguard foreign government

16  information under standards that provide a degree of protection at least equivalent to that required by the

17  government . . . that furnished the information.  When adequate to achieve equivalency, these standards

18  may be less restrictive than the safeguarding standards that ordinarily apply to U.S. ''Confidential''

19  information, including modified handling…."

20      Fifth, Plaintiff argues that "[State] has published an agreement in its entirety between the U.S.

21  and Israel that is labeled 'For Official Use Only' and references the GSOIA in its preamble."  To state

22  the obvious: "For Official Use Only" is not "Mugbal" (i.e. restricted) and, even if the governments had

23  chosen to disclose other information in a different situation (which is not clear from the facts provided),

24  it does not commit them to do so ever again.

25      Finally, Plaintiff argues that the Israeli government released information about "entry

26  procedures" on its "official website" which "made clear its intent to discriminate" and that "[e]ven

27  Israeli media" had access to the MOU.  This argument is also misplaced.  It appears to be a repackaged

28

OPP. TO MSJ; CROSS-MOTION FOR MSJ
3:24-cv-01095-JD

version of prior disclosure, which Plaintiff acknowledges as being addressed later in its MSJ.  Even so, Plaintiff offers no case law to support the notion that a media rumor or internet reference waives FOIA protections.  In fact, courts faced with similar arguments about Section 1.4(b) have reached the opposite conclusion.  *See, e.g., Am. Ctr. for L. & Just. v. Dep't of State*, at 11-12 ("As with many frustrated folk, Plaintiff then takes to the Internet…[p]osting that the discussion there of topics similar to those classified here [undermine the application of Exemption 1]…The Court is not convinced.").

**(ii)    Plaintiff's arguments about Section 1.4(d) are unsupported by both law and fact.**

Section 1.4(d) addresses "foreign relations or foreign activities of the United States, including confidential sources."  *See, e.g., Intell. Prop. Watch v. USTR*, 205 F. Supp. 3d 334, 356 (S.D.N.Y. 2016) (protecting draft U.S. trade proposals because "disclosure of the [United States'] evolving negotiating positions could damage other ongoing or future trade negotiations with other countries…"); *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 300 (D.D.C. 2013) (protecting information concerning the "United States' role in formulating Iraq's proposed hydrocarbon laws and developing Iraq's oil and gas sector"); *Am. Ctr. for L. & Just. v. Dep't of State*, 354 F. Supp. 3d 1, 11 (D.D.C. 2018) (finding that disclosure could harm foreign relations by causing foreign officials to believe confidentiality might not be observed and risking inability to obtain information from foreign governments) (decided under Executive Order 13,526).

First, Plaintiff argues that the declaration does not "explain[] in any particularity" why disclosure of the record would "create distrust among governments."  MSJ 21.  This is a misinterpretation of the applicable standard.  In fact, "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified."  *Am. Ctr. for L. & Just.*, 354 F. Supp. 3d at 11 (citing *Morley*, 508 F.3d at 1124).  Moreover, "in the national security context… 'substantial weight' must be given to agency declarations."  *Id.* at 9 (citing *ACLU v. DOJ*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003)).  The declaration here was therefore entirely appropriate.

Second, plaintiff's reliance on *Wiener* is fundamentally misplaced.  *See* MSJ 21.  That case involved a FOIA request to the FBI for records related to John Lennon, the late guitarist for the

Beatles. 943 F.2d 972 (9th Cir. 1991).  The decision does not explicitly mention Section 1.4(d) and devotes only two sentences to analyzing the withholdings made for purposes of "foreign relations and government." *Id.* at 982.  In those sentences, the court found that more explanation was needed because it was unclear how documents about Mr. Lennon could have had "any relevance" to the asserted concern about military retaliation against the United States.  *Id.*  That is not the situation here.  The present case falls squarely within well-established case law interpreting Section 1.4(d).  *See, e.g., Am. Ctr. for L. & Just.*, 354 F. Supp. 3d at 11 (finding that Section 1.4(d) was properly invoked where the asserted grounds included that "foreign officials [could] believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges," which could harm "bilateral relationships with countries whose cooperation is important to U.S. national security").  Here, he Kootz declaration explains that disclosure could jeopardize not only "the bilateral relationship between the United States and the foreign government in question," but also "the U.S. Government's foreign relations more broadly."  The declaration further elaborates that such harm could result from "foreign governments [losing] trust that information it deemed sensitive and protected could be shared with the United States on a truly confidential basis…"  Invocation of section 1.4(d) requires no further explanation.  The only other cases Plaintiff cites—*Davin* and *ACLU*—make no mention of Section 1.4(d) whatsoever.  *Davin* does not even address Exemption 1.

Plaintiff closes by recycling this argument to claim another section of E.O. 13,526 (section 1.1) requires a different explanation regarding the tie to national security.  *See* MSJ 21.  Not so.  The explanation given here—including the risk that critical allies "lose trust" in the United States' ability to keep materials confidential—strikes at the heart of national security.  *See Am. Ctr. for L. & Just.*, 354 F. Supp. 3d at 11 ("It is against precisely such harm to the Government's "foreign relations" that § 1.4(d) seeks to protect.").  In short, Plaintiff again misconstrues the applicable standard.

**4.    Plaintiff's argument about segregating information is a red herring.**

Plaintiff next raises two arguments about segregating information it believes to be non-exempt.  First, that there is "nothing to elucidate how the agency conducted its segregability analysis" and that "it is impossible that all the information within the thirteen page [*sic*] document is exempt from disclosure."

MSJ 22.  Second, Plaintiff claims, alternatively, that it is entitled to in camera review.  *Id.* at 23.  Each argument is faulty.

The agency is not required to release non-exempt portions if they are intertwined with exempt portions.  While this analysis is often applied to large volumes of data, it also speaks to instances where the non-exempt information consists of routine details—such as titles, signatories, or other information of "little information value." *See Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 & n.55 (D.C. Cir. 1977); *see also Flight Safety Servs. Corp. v. Dep't of Lab.*, 326 F.3d 607, 613 (5th Cir. 2003) (per curiam) (finding no reasonably segregable information where, inter alia, "any disclosable information is so inextricably intertwined with the exempt, confidential information that producing it would require substantial agency resources and produce a document of little informational value").  Here, the types of information Plaintiff claims are known are precisely that kind of low value information that need not be released.

Finally, Plaintiff has not met the high bar required for in camera review.  In the FOIA context, the D.C. Circuit has held that "[w]hen an agency meets its burden through affidavits, in camera review is neither necessary nor appropriate, and in camera inspection is particularly a last resort in national security situations." *Mobley v. CIA*, 806 F.3d 568, 588 (D.C. Cir. 2015).  Moreover, courts have consistently rejected the idea that additional judicial review should be triggered solely by a requester's unsupported allegations of government misconduct.  *Competitive Enter. Inst. v. Dep't of Treasury*, 319 F. Supp. 3d 410, 422 (D.D.C. 2018) (finding in camera inspection unnecessary without "tangible evidence of agency wrongdoing").  Here, the agencies have provided appropriate declarations for a record that falls under potentially two categories of section 1.4.  Nothing more is required.

### 5.    Plaintiff's argument for prior disclosure fails to meet the well-established test.

Towards the end of its brief, Plaintiff raises an argument about prior disclosure.  Specifically, Plaintiff contends that "Defendants have disclosed identical information in the past and, thus, any alleged exemptions are waived here."  MSJ 23.  While Plaintiff acknowledges the requirement that any such disclosure must come from an official source, it claims to have met this standard based on

1   references to the existence of the agreement, its title, its signatories, or general statements by the

2   government about visa requirements.  None of this constitutes valid prior disclosure.

3       An agency waives its ability to invoke Exemption 1 only for information it has "officially

4   acknowledged."  The D.C. Circuit has established a test, sometimes referred to as the *Fitzgibbon* test,

5   under which a plaintiff must satisfy three elements to demonstrate that information has been "officially

6   acknowledged."  Specifically, information is considered "officially acknowledged" if: (i) "the

7   information requested [is] as specific as the information previously released;" (ii) "[the information

8   requested] match[es] the information previously disclosed;" and (iii) "[the information requested]

9   already ha[s] been made public through an official and documented disclosure."  *Fitzgibbon v. CIA*, 911

10  F.2d 755, 765-66 (D.C. Cir. 1990).  The D.C. Circuit has further emphasized that "[t]his test is quite

11  strict," and "[p]rior disclosure of similar information does not suffice; instead, the *specific information*

12  sought by the plaintiff must already be in the public domain *by official disclosure*."  *ACLU v. DOJ*, 640

13  F. App'x 9, 11 (D.C. Cir. 2016) (internal citations omitted) (emphasis added).  What's more, courts have

14  consistently held that the plaintiff bears the burden of proving waiver, and these elements create a "high

15  hurdle for a FOIA plaintiff to clear" because of the government's "vital interest in information relating to

16  national security and foreign affairs."  *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993).

17      Plaintiff fails to meet the *Fitzgibbon* test on multiple grounds.  First, the law firm has not

18  demonstrated that the "specific information" it seeks is already in the public domain due to "official

19  disclosure."  In fact, the press release discussing Israel's participation in the VWP does not address the

20  "specific" thirteen pages of records at issue here.  Instead, it focuses primarily on general reciprocity and

21  runs two sentences.  *See* Sinodis Decl. (Dkt. 41-11). Even if some information were publicly available

22  (title, signatories, general topic), that still would not justify questioning the confidentiality of other

23  records that remain protected under Exemption 1.  *See Students Against Genocide v. Dep't of State*, 257

24  F.3d 828, 835 (D.C. Cir. 2001) (release of similar photographs did not waive Exemption 1 because

25  "some 'information resides in the public domain [but] does not eliminate the possibility that further

26  disclosures can cause harm to [national security]'") (quoting *Fitzgibbon*, 911 F.2d at 766)).

27

28

OPP. TO MSJ; CROSS-MOTION FOR MSJ
3:24-cv-01095-JD

Courts ordinarily do not penalize agency officials for sharing information concerning government activities with the public in general terms because "[t]o do so would give the Government a strong disincentive ever to provide its citizenry with briefings of any kind on sensitive topics." *Bassiouni v. CIA*, 392 F.3d 244, 247 (7th Cir. 2004) ("[I]f even a smidgen of disclosure required the CIA to open its files, there would be no smidgens.").

Courts have also rejected the view that the availability of information on the internet or widespread reports in the media about the general subject matter of the FOIA request are sufficient to overcome an agency's Exemption 1 claim for related records.  *See N.Y. Times v. CIA,* 965 F.3d 109, at 116 (2d Cir. 2020) (cautioning that the courts will "not infer official disclosure of information classified by the CIA from [] widespread public discussion of a classified matter") (internal citations omitted); *Am. Ctr. for L. & Just. v. Dep't of State*, 354 F. Supp. 3d at 12 ("If Exemption 1 were considered waived every time a controversial issue was discussed on the Internet, then even the most sensitive information would be subject to disclosure.").

## V.    CONCLUSION

For the foregoing reasons, State and Homeland Security respectfully request that the Court enter an order granting summary judgment in the agencies' favor on the cause of action brought by Plaintiff in this action.

Dated: October 17, 2024

ISMAIL J. RAMSEY
United States Attorney

*/s/ Benjamin J. Wolinsky*
BENJAMIN J. WOLINSKY
Assistant U.S. Attorney

*Attorneys for Defendants*