1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2  PAMELA T. JOHANN (CABN 145558)
   Chief, Civil Division
3  BENJAMIN J. WOLINSKY (CABN 305410)
   Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102-3495
        Telephone: (415) 436-7288
6       Facsimile: (415) 436-6996
        benjamin.wolinsky@usdoj.gov
7
   Attorneys for the United States of America
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13 VAN DER HOUT LLP,                         )  Case No. 3:24-cv-01095-JD
                                             )
         Plaintiff,                          )  **REPLY IN SUPPORT OF CROSS-MOTION**
14                                           )  **FOR SUMMARY JUDGMENT**
                                             )
15    v.                                     )  Date:      December 5, 2024
                                             )  Time:      10:00 a.m.
16 U.S. DEPARTMENT OF HOMELAND               )  Location:  450 Golden Gate Avenue
   SECURITY and U.S. DEPARTMENT OF           )             San Francisco, CA 94102
17 STATE.,                                   )             Courtroom 11
                                             )
18       Defendants.                         )
   _____)

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

I.    Plaintiff is not entitled to implicit amendment of its complaint or to declaratory relief
as a "sanction."..................................................................................................................2

II.    The agencies conducted reasonable searches, capturing the single record requested by
Plaintiff. ...........................................................................................................................5

    A.    Plaintiff insists that highly-specific terms and custodians were "obvious"—
despite omitting them from its own FOIA request. ...........................................5

        1.    State conducted a reasonable search in accordance with Ninth Circuit
precedent. ...............................................................................................5

        2.    State's reasonable search yielded the single record requested by
Plaintiff.  Its criticisms about search terms make no difference. ...........6

    B.    Homeland Security conducted a reasonable search in response to the FOIA
request. ...........................................................................................................7

        1.    Homeland Security used an appropriate timeframe, which located the
one record that Plaintiff requested and confirmed no relevant changes. ...7

        2.    Homeland Security's search parameters were reasonable. ......................8

III.    Plaintiff misconstrues the applicable standard for purposes of Exemption 1, which is
simply a "plausible" classification rationale....................................................................8

    A.    Plaintiff misconstrues the requirements of E.O. 13526. ....................................8

        1.    The agencies met all procedural requirements under E.O. 13526. ..........9

        2.    The agencies met the substantive requirements of Exemption 1. ..........10

            (i)    Plaintiff's arguments about Section 1.4(b) are contrary to law. ...............10

            (ii)    Plaintiff's arguments about Section 1.4(d) are contrary to law. ...............12

        3.    State satisfied the applicable standard by providing a "plausible"
affidavit demonstrating reasonable specificity and a logical relation to
the exemption....................................................................................12

    B.    Plaintiff fails to articulate facts establishing that classification was solely "in
order to" conceal unlawful activity..................................................................13

    C.    Plaintiff's segregation argument is a failing attempt to salvage its claims........13

    D.    The *Fitzgibbon* test has not been satisfied because Plaintiff does not show that
the information requested is "as specific" as the information previously
released. .........................................................................................................14

CONCLUSION...................................................................................................................15

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*ACLU v. DOJ,*
    265 F. Supp. 2d 20 (D.D.C. 2003) ................................................................................ 1, 12

*Am. Ass'n of Cosmetology Schs. v. Riley*,
    170 F.3d 1250 (9th Cir. 1999) .................................................................................... 4

*Am. Ctr. for Law & Justice v. Dep't of State*,
    354 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................... passim

*Am. Oversight v. DOJ,*
    401 F. Supp. 3d 16 (D.D.C. 2019) ............................................................................. 6

*Anguiano v. ICE,*
    356 F. Supp. 3d 917 (N.D. Cal. 2018) ...................................................................... 7

*Canning v. U.S. Dep't of State,*
    134 F. Supp. 3d 490 (D.D.C. 2015) ..................................................................... 10, 11

*Competitive Enter, Inst. v. Dep't of Treasury,*
    319 F. 3d 410 (D.D.C. 2018) .................................................................................... 13

*Fitzgibbon v. CIA,*
    911 F.2d 755 (D.C. Cir. 1990) .................................................................................. 14

*Frontier Found. v. DOJ,*
    532 F. Supp. 2d 22 (D.D.C. 2008) ............................................................................ 15

*Hamdan v. DOJ,*
    797 F.3d 759 (9th Cir. 2015) ..................................................................................... 7

*Inter-Coop. Exch. v. U.S. Dep't of, Com.,*
    36 F.4th 905 (9th Cir. 2022) ..................................................................................... 7

*Koch v. Koch Industries, Inc.,*
    203 F.3d 1202 (10th Cir. 2000) ................................................................................ 3

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) ................................................................................. 7

*Madeja v. Olympic Packers, LLC,*
    310 F.3d 628 (9th Cir. 2002) .................................................................................... 3

*Mobley v. CIA,*
    806 F.3d 568 (D.C. Cir. 2015) ................................................................................. 14

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) ......................................................................... 1, 8, 11, 12

*Nat'l Pub. Radio, Inc. v. U.S. Cent. Command*,
    646 F. Supp. 3d 1245 (S.D. Cal. 2022) ......................................................................... 4, 5

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,
    85 F. Supp. 3d 1074 (N.D. Cal. 2015) ......................................................................... 1, 4

*Pub. Citizen v. Dep't of State*,
    11 F.3d 198 (D.C. Cir. 1993) ......................................................................... 2, 15

*Public Citizen v. Dep't of State*,
    787 F. Supp. 12 (D.D.C. 1992) ......................................................................... 15

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
    No. 06-cv-2845, 2008 WL 2523819, at *1 n.1 (E.D. Cal. June 20, 2008) ........................... 3

*Sakamoto v. EPA*,
    443 F. Supp. 2d 1182 (N.D. Cal. 2006) ......................................................................... 1, 5

*Transgender Law Ctr.*,
    46 F.4th 771 (9th Cir. 2022) ......................................................................... 5, 6, 14

**Statutes**

5 U.S.C. § 552(c) ......................................................................... 8

**Rules**

Fed. R. Civ. P. 15(b)(2) ......................................................................... 1, 2, 3

**Regulations**

6 C.F.R. § 5.4(a) ......................................................................... 7, 8

**Other Authorities**

Federal Practice and Procedure § 1493 (3d ed. 2024) ......................................................................... 2, 3

**INTRODUCTION**

This FOIA case involves a single record that a foreign government has classified as restricted under its security agreement with the United States.  The Department of State ("State") and the Department of Homeland Security ("Homeland Security") have determined that the record falls under two separate categories of Executive Order 13526 and must therefore be withheld under Exemption 1. The analysis should end here, as "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified."  *Am. Ctr. for Law & Justice v. Dep't of State*, 354 F. Supp. 3d 1, 11 (D.D.C. 2018) (citing *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007)).  This is particularly true because in the "national security context … 'substantial weight'" must be given to agency declarations.  *Id.* at 7 (citing *ACLU v. DOJ*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003)).  Plaintiff's arguments fail to alter this conclusion.

First, there is no basis to amend the complaint by implication under Fed. R. Civ. P. 15(b)(2). The agencies denied that Plaintiff's second FOIA request is subject to litigation in this action.  *See*, *e.g.*, Dkt. No. 42 ("Cross-MSJ") at 2 ("[T]hat second request is not at issue and cannot be litigated here."). What's more, any reference to that second FOIA request was about its scope, not the timing of response, which is an issue that Plaintiff brought up itself.  Similarly, this Court has long held that a technical violation of the FOIA deadline does not, by itself, warrant declaratory relief.  *See Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015).  No exception is warranted given the facts alleged in the complaint.

Second, the agencies conducted successful searches that captured the record at issue.  Although Plaintiff insists that highly-specific terms and search locations were "obvious," it neither included them in its own FOIA request nor explains how it would change the outcome in this case.  The searches were reasonable given the scope of request.  *See Sakamoto v. EPA*, 443 F. Supp. 2d 1182, 1198-99 (N.D. Cal. 2006) (holding a search within one region adequate where the agency "reasonably concluded" that responsive documents would "most likely" be found there).

Third, the agencies have satisfied the requirements of Exemption 1.  The record was properly withheld because Israel classified it as "Mugbal" (restricted).  The United States is obligated to maintain

1   the confidentiality of this record under its General Security of Information Agreement ("GSOIA") with

2   Israel and E.O. 13526.  The declarations provide sufficient detail regarding the potential harm that

3   would result from disclosing the record, and Plaintiff's contrary arguments are unsupported.  Although

4   Plaintiff continues to question the validity of the policies allegedly therein, such challenges do not: (i)

5   establish that the classification was "in order to" conceal unlawful conduct, or (ii) negate the otherwise

6   proper classification.  *Cf. Am. Ctr. for Law & Justice*, 354 F. Supp. 3d at 13 (noting that even if portions

7   of a record were classified for improper reasons, they are still covered by Exemption 1).

8       Lastly, Plaintiff has not satisfied the *Fitzgibbon* waiver test because it has not—and cannot—

9   show that any prior references by "official sources" were "as specific" as the record itself.  Plaintiff

10  relies on a few summary paragraphs to argue waiver over a 13-page record, but this is insufficient.  The

11  "as specific" element is not only controlling but also important, as failing to apply it would, ironically,

12  disincentivize disclosure.  *See Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993) (to hold

13  otherwise, in a case where the government had affirmatively disclosed some information about a

14  classified matter related to "national security and foreign affairs," would give the agency "a strong

15  disincentive ever to provide its citizenry with briefings of any kind on sensitive topics.").

16

17  **I.    Plaintiff is not entitled to implicit amendment of its complaint or to declaratory relief as a "sanction."**

18      Plaintiff claims entitlement to "declaratory relief" to "sanction" the timing of the agencies'

19  responses.  Dkt. No. 44 ("Pltf.'s Opp.") at 2.  Plaintiff further relies on an unpublished order from the

20  Eastern District of California to suggest that this Court should also grant relief as to Plaintiff's second

21  FOIA request—made 10 weeks before the amendment deadline but never incorporated into the

22  complaint or a timely amended complaint.[1]  In doing so, Plaintiff misinterprets both the doctrine of

23  implied consent under Fed. R. Civ. P. 15(b)(2) and the scope of available remedies.

24      First, there is no basis to consider the second FOIA request under Fed. R. Civ. P. 15(b)(2).

25  Issues may be tried either by the express or implied consent of the parties.  *See* Wright & Miller, Federal

26

27  ───────────────
    [1] Plaintiff submitted its second FOIA request on April 16, 2024.  *See* Dkt. No. 42-1.  The
28  deadline to amend its complaint passed on June 28, 2024.  *See* Dkt. No. 37 at 1.

1    Practice and Procedure § 1493 (3d ed. 2024).  Express consent may be given by stipulation, or may be

2    incorporated in a pretrial order and rarely raises any serious fact questions.  *Id.*  Implied consent,

3    however, is "much more difficult to establish" as it depends on whether the parties recognized that an

4    issue not presented by the pleadings entered the case at trial.  *Id.*  If they do not, there is no consent and

5    the amendment cannot be allowed.  *Id.*  In this case, neither party suggests there was express consent to

6    adjudicate issues related to the second FOIA request.  Though, Plaintiff seems to suggest by its footnote

7    that there is implied consent with respect to the timing of the response to that second FOIA request.  *See*

8    Pltf.'s Opp. at 3 n.1.  Not so.

9        The agencies explicitly denied that the second FOIA request is relevant to this case.  Their brief

10   provides several examples of such denials, including:

11        ❖   "[T]hat second request is not at issue and cannot be litigated here…" (Cross-MSJ at 2);

12        ❖   "The response to the second FOIA request is being handled separately from this action…"

13            (*Id.* at 7);

14        ❖   "[T]hose, later submitted requests are not at issue here…" (*Id.* at 11);

15   It is axiomatic that implied consent does not exist where a party has made an express denial.  *Cf.* Wright

16   & Miller, Fed. Prac. & Proc. § 1493 n.12 ("When the evidence claimed to show that an issue was tried

17   by consent is relevant to an issue already in the case, and there is no indication that the party presenting

18   the evidence intended thereby to raise a new issue, the amendment may be denied in the discretion of the

19   trial court.") (citing *Koch v. Koch Industries, Inc.*, 203 F.3d 1202 (10th Cir. 2000), *cert. denied*, 531

20   U.S. 926 (2000)).  Nothing in the agencies' brief suggests an intent to litigate the second FOIA request

21   in this action.

22        Even so, the agencies referenced only the second FOIA request's scope—not the timing of any

23   response.  That issue of timing, introduced by Plaintiff itself, falls outside the scope of Rule 15(b)(2).

24   *See id.* n.7 (noting that Rule 15(b)(2) does not allow amendments based on issues inferentially suggested

25   by incidental evidence in the record) (citing *Madeja v. Olympic Packers, LLC*, 310 F.3d 628 (9th Cir.

26   2002)).  The one unpublished order that Plaintiff does cite actually underscores this distinction.  *See S.*

27   *Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. 06-cv-2845, 2008 WL 2523819, at *1

28

REPLY ISO CROSS-MSJ
3:24-cv-01095-JD

n.1 (E.D. Cal. June 20, 2008) ("[T]he pending motions are a valid vehicle for addressing some of those allegations, and doing so does not prejudice defendants, because they addressed the **timeliness of their response** to the [subsequent FOIA] request [in their motion for summary judgment]…") (emphasis added). Other than a passing reference to the request being "pending," the agencies never mentioned the response and certainly never raised the issue of timeliness for that second FOIA request. Doing so now would prejudice them because there is not a proper record or full opportunity to try the issue.

Second, Plaintiff is not entitled to declaratory relief as a "sanction." Plaintiff vaguely asserts that the Court should grant declaratory judgment to "hold adherence to the law," (Pltf.'s Opp. at 3) apparently with respect to the second FOIA request. However, that is not a request for declaratory relief; it is, in effect, a request for injunctive relief under a different label. *Cf. Am. Ass'n of Cosmetology Schs. v. Riley*, 170 F.3d 1250, 1258 (9th Cir. 1999) ("[I]t seems obvious that the anti-injunction bar [of the 1965 Higher Education Act] cannot be skirted by the simple expedient of labeling an action that really seeks injunctive relief as an action for 'declaratory relief.'"). However, Plaintiff has not sought injunctive relief except as to the first FOIA request and the imposition of processing fees. *See* Dkt. No. 1 ("Compl.) at 11-12. There is no legal basis for granting injunctive relief concerning a separate FOIA request beyond those pleadings. To be sure, such relief is neither sought in the Plaintiff's original complaint nor in any amended complaint, despite the Plaintiff having had more than 10 weeks to request such an amendment.

Third, Plaintiff is not entitled to such relief because it has not pled a pattern or practice. This Court has long held that a technical violation of the FOIA deadline alone does not automatically warrant declaratory relief. *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015). Plaintiff is not entitled to relief as a "matter of law." *See id.* (though the court retains discretion to make a declaratory judgment, "as a matter of statutory interpretation it is clear that the only legal consequence that flows directly from an agency's failure to provide a determination within the statutory time limits is the waiver of the administrative exhaustion requirement."). Nor has not asserted a "pattern and practice" claim in this action, *see generally* Compl., and it has neither established repeated violations nor reason to believe future requests will go without response. *See Nat'l*

REPLY ISO CROSS-MSJ
3:24-cv-01095-JD

1   *Pub. Radio, Inc. v. U.S. Cent. Command*, 646 F. Supp. 3d 1245, 1257–58 (S.D. Cal. 2022), *rev'd in part*

2   *on other grounds*, 2024 WL 3066048 (9th Cir. 2024).  Declaratory relief is not warranted here because

3   Plaintiff has not pled a pattern or practice, nor does it allege any actions making such relief reasonable.

4   For example, Plaintiff does not allege even basic attempts to follow-up on its FOIA request, such as

5   follow-up communications with the agencies to check on timing.  *Compare with Transgender Law Ctr.*,

6   46 F.4th 771, 780 (9th Cir. 2022) (agency failed to provide timely response despite follow-up

7   communications from the requester).

8   **II.    The agencies conducted reasonable searches, capturing the single record requested by**
       **Plaintiff.**
9

10           **A.    Plaintiff insists that highly-specific terms and custodians were "obvious"—despite**
              **omitting them from its own FOIA request.**
11

12           For unclear reasons, Plaintiff continues to challenge the searches that successfully located the

13   single record sought in its request.  Homeland Security further confirmed that there were "no records of

14   changes" to that document during the relevant time period.  *See* Declaration of Catarina Pavlik-Keenan

15   (Dkt. No. 42-2).  It is evident that the agencies conducted searches in accordance with binding Ninth

16   Circuit precedent.

17
              **1.    State conducted a reasonable search in accordance with Ninth Circuit**
18                  **precedent.**

19           Plaintiff claims that the agency overlooked "very obvious custodians," including the U.S.

20   Embassy in Israel, which supposedly has information about the VWP "readily available" on its website.

21   Pltf.'s Opp. at 4.  Next, Plaintiff argues that the agencies "fail[ed] to rebut [its] claim that their searches

22   were not 'reasonably calculated' to uncover all relevant documents…"  *Id.* (citing *Transgender Law Ctr.*

23   *v. ICE*, 46 F.4th at 779).  Both claims are meritless.

24           First, the agency conducted a reasonable search that yielded the one record at issue.  IPS made a

25   logical decision to search the NEA/IPA locations and the database most likely to contain the responsive

26   record.  *See Sakamoto v. EPA*, 443 F. Supp. 2d 1182, 1198-99 (N.D. Cal. 2006) (holding a search within

27   one region adequate where the agency "reasonably concluded" that responsive documents would "most

28

REPLY ISO CROSS-MSJ
3:24-cv-01095-JD

1  likely" be found there). That search returned the single record at issue, demonstrating that it was both

2  reasonable and effective in locating the record requested. Plaintiff offers no explanation of any

3  additional documents it believes were missed under its first FOIA request, which remains the only

4  request at issue in this case.

5        Second, none of the offices Plaintiff now deems "obvious" were identified in Plaintiff's original

6  FOIA request or any subsequent communications, which is significant under Ninth Circuit precedent.

7  *See Transgender Law Ctr.*, 46 F.4th at 780. In *Transgender Law Center*, the requesting organization

8  sought records related to the death of an immigration detainee. *Id.* at 778. In addition, the requesting

9  organization included "two pages of detailed search requests" and followed up with additional search

10  leads derived from a state-level public records request to a government contractor. *Id.* at 780. These

11  follow-up communications identified specific documents likely in the federal government's possession.

12  Moreover, the follow-ups were "not cursory complaints"; the requester named "48 custodian email

13  accounts." *Id.* at 780. In light of those facts, the Ninth Circuit vacated the district court's summary

14  judgment for two reasons: the agency failed to pursue "obvious leads" and did not adequately respond to

15  "positive indications of overlooked materials." *Id.*

16        Neither condition is present here. Plaintiff's original request provided no specific leads about the

17  locations and custodians it now calls "obvious." Moreover, there is no "positive indication" of

18  overlooked material, as State's search returned the single record Plaintiff requested. Plaintiff has no

19  basis now to quibble with the agency's search. *See Am. Oversight v. DOJ*, 401 F. Supp. 3d 16, 30-31

20  (D.D.C. 2019) (finding that Plaintiff failed to identify additional custodians and noting that "simply

21  claiming that it is 'common sense' and 'commonplace knowledge' that records would likely exist

22  elsewhere…is far from the specific evidence that is usually required to overcome an agency's

23  representations."). The search was demonstrably reasonable as evidenced by its result.

24
25        **2.**      **State's reasonable search yielded the single record requested by Plaintiff. Its criticisms about search terms make no difference.**

26        Plaintiff repeats its prior criticism of the applied search terms, arguing this time that a document

27  containing the full phrase "Memorandum of Understanding" but not the acronym "MOU" might have

28

REPLY ISO CROSS-MSJ
3:24-cv-01095-JD

1   been excluded.  Pltf.'s Opp. at 6.  This criticism is directly contradicted by applicable precedent and the

2   search results.

3          The fact is that State used reasonable search terms given the nature of the first FOIA request.

4   While the Court must view facts in the light most favorable to the requester, the adequacy of a search is

5   assessed under a "standard of reasonableness."  *See Inter-Coop. Exch. v. U.S. Dep't of Com.*, 36 F.4th

6   905, 911 (9th Cir. 2022). The Ninth Circuit has recognized that government agencies, with their "unique

7   knowledge of the manner in which they keep their own files and the vocabulary they use," are generally

8   in the best position to select search terms. *Id*. (citing *Anguiano v. ICE*, 356 F. Supp. 3d 917, 921 (N.D.

9   Cal. 2018)). Courts have upheld searches as reasonable when based on a reasonable interpretation of the

10  request's scope. *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (affirming adequacy of

11  search based on agency's reasonable determination of the records being requested).

12         That choice was reasonable because the first FOIA request specifically sought MOUs and

13  records "reflecting changes."  Terms like "MOU" and "Israel" were appropriate to "uncover all relevant

14  documents," given the highly targeted nature of the request.  Since two-thirds of the request sought

15  individual MOUs and the remainder implied changes after implementation, the search terms were

16  reasonable. *See Hamdan v. DOJ*, 797 F.3d 759, 772 (9th Cir. 2015) (FOIA requestors are only "entitled

17  to a reasonable search for records, not a perfect one"). This is particularly true because the first FOIA

18  request did not include broad terms like "related to," "associated with," or "connected to," which

19  appeared only in the second request after the lawsuit began.  However, again, those later requests are not

20  at issue here.

21      **B.      Homeland Security conducted a reasonable search in response to the FOIA request.**

22

23          **1.      Homeland Security used an appropriate timeframe, which located the one
                      record that Plaintiff requested and confirmed no relevant changes.**

24

25         Plaintiff appears to abandon its first argument about date range in favor of a new one.  In its

26  latest brief, Plaintiff claims that "DHS was obliged to search for records in its possession 'as of the date

27  that it begins its search,' 6 C.F.R. § 5.4(a), rather than as of the date of the request."  Pltf.'s Opp. at 6-7.

28

1   Plaintiff's claim that Homeland Security was "obliged" to search that range, due to a federal regulation,

2   is wrong.

3       The truth is that's not what the regulation says.  The relevant section reads in full:

4           Except in the instances described in paragraphs (c) and (d) of this section, the component
            that first receives a request for a record and maintains that record is the component

5           responsible for responding to the request. In determining which records are responsive to
            a request, a component **ordinarily** will include only records in its possession as of the

6           date that it begins its search. **If any other date is used, the component shall inform the
            requester of that date**. A record that is excluded from the requirements of the FOIA

7           pursuant to 5 U.S.C. [§] 552(c), shall not be considered responsive to a request.

8   6 C.F.R. § 5.4(a) (emphasis added).  The cited regulation speaks only to "ordinary" practice—not a

9   mandatory one.  Even so, all that is required then is to inform the requester of the applied date range,

10  which is exactly what has happened repeatedly since then.

11              **2.      Homeland Security's search parameters were reasonable.**

12      Plaintiff concludes its critique of the agency's searches with a one-paragraph claim that "two

13  DHS offices conducted zero electronic searches in response to Plaintiff's FOIA request." Ironically,

14  Plaintiff fails to specify which offices it means.  In any event, the argument lacks merit.  The first FOIA

15  request sought a single record, which was located, along with confirmation of no record of changes.  The

16  agencies conducted reasonable searches, consistent with precedent, as outlined above.

17  **III.    Plaintiff misconstrues the applicable standard for purposes of Exemption 1, which is
            simply a  "plausible" classification rationale.**

18

19          **A.      Plaintiff misconstrues the requirements of E.O. 13526.**

20      The one record at issue was properly withheld because Israel classified it as "Mugbal"

21  (restricted).  The United States is obligated to maintain the confidentiality of this record under its

22  General Security of Information Agreement ("GSOIA") with Israel and E.O. 13526.  The declarations

23  provide sufficient detail regarding the potential harm that would result from disclosing the record, and

24  Plaintiff's contrary arguments are unsupported.  The analysis should end here, as "the text of Exemption

25  1 itself suggests that little proof or explanation is required beyond a plausible assertion that information

26  is properly classified." *Am. Ctr. for Law & Justice v. Dep't of State*, 354 F. Supp. 3d 1 (D.D.C. 2018)

27  (citing (citing *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007)).

28

REPLY ISO CROSS-MSJ
3:24-cv-01095-JD

1                     **1.      The agencies met all procedural requirements under E.O. 13526.**

Plaintiff muddles the fundamental procedures for classifying information under Executive Order 13526.  Still, that does not alter the objective facts or relevant legal framework.

The facts in this respect are straightforward.  Director Kootz is an original classification authority who classified the record on behalf of the State Department.  *See* Kootz Decl.  ¶ 24.  Plaintiff argues that Defendants failed to provide evidence demonstrating Kootz's authority to classify the document under section 1.7(d) of E.O. 13526.  *See* Pl. Reply, p. 9, ll. 3–4.  However, Plaintiff's assertion is based on a misreading of the Order.  An "original classification authority" is defined as an individual authorized in writing by the President, Vice President, or designated officials to classify information initially. *See* E.O. 13526 § 6.1(gg).

Director Kootz clearly meets this definition.  At the time of the classification and at the time of his Declaration, Director Kootz served as the Director of Information Programs and Services (A/GIS/IPS).  As outlined in the Foreign Affairs Manual (FAM),[2] A/GIS/IPS is responsible for implementing E.O. 13526, including the classification and declassification of information.  *See* 5 FAM 481.3(b).  Director Kootz is the official responsible for overseeing the Department's classification program and is delegated authority by the Under Secretary for Management, who serves as the senior agency official under E.O. 13526.  5 FAM 481.3(a); E.O. 13526, § 5.4.  Additionally, Kootz's office manages the identification of all original classification authorities within the Department. 5 FAM 482.2(d).

Plaintiffs' interpretation of section 1.7(d) is also mistaken.  They appear to believe that the senior agency official must personally classify the document.  This is incorrect.  Section 1.7(d) only requires that classification be executed "with the personal participation or under the direction of" the senior agency official.  5 FAM 483.3-2 confirms that when information is requested under FOIA, it can be classified only under the more restricted terms of section 1.7(d) and that classification may only be executed by officials designated under this section, such as the Director of A/GIS/IPS.  5 FAM

---

[2] *Available at https://fam.state.gov/fam/05fam/05fam0480.html* (last accessed November 21, 2024, at 1:08 p.m.).

1    482.9(a)(2).  In this case, Director Kootz acted under the direction of the Under Secretary for

2    Management, as explicitly required by both E.O. 13526 and the FAM.

3        Plaintiffs' reliance on the *Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490 (D.D.C. 2015), is

4    also misplaced.  *Canning* affirms that the senior agency official may delegate authority to review

5    documents for classification under section 1.7(d), provided that the official with delegated authority

6    keeps the senior agency official informed.  *Id.* at 507.  Here, Director Kootz not only kept the Under

7    Secretary apprised of the classification decision but also afforded him the opportunity to concur or

8    object.  This process exceeds the requirements set forth in *Canning*, and is fully consistent with the

9    procedural standards for classification under E.O. 13526.

10        Finally, Plaintiffs' claim that the State has misrepresented Israel as an original classifying

11    authority is both incorrect and without merit.  The classification of Israeli information is relevant

12    because it triggered the United States' obligation to protect such information as "foreign government

13    information" under Executive Order 13526.  *See* E.O. 13526 §§ 1.1(a)(1); 6.1(s)(1), (2).  Plaintiffs'

14    attempt to challenge the interpretation of the General Security of Information Agreement ("GSOIA") is

15    similarly misplaced and irrelevant to this case. Regardless of Plaintiffs' erroneous reading of the

16    agreement, its interpretation is not at issue here.  E.O. 13526 specifically governs the foreign

17    government's "expectation" regarding the handling of its classified information.  *See* E.O. 13526 §

18    6.1(s)(1), (2).  The U.S. Department of State, with over four decades of experience in applying the

19    GSOIA, is far better positioned to understand and interpret Israel's expectations under the agreement

20    than the Plaintiff.

21

22        **2.        The agencies met the substantive requirements of Exemption 1.**

23        Plaintiff argues again that the agencies have not shown that the one record at issue falls into "one

24    of eight enumerated categories of information contained in Section 1.4 of the E.O."  Not so.

25        **(i)        Plaintiff's arguments about Section 1.4(b) are contrary to law.**

26        Plaintiff contends that the record does not meet the criteria for "foreign government information"

27    under section 1.4(b).  Pltf.'s Opp. at 10.  Plaintiff then copies and pastes a full page of links to U.N.

28

REPLY ISO CROSS-MSJ
3:24-cv-01095-JD

1  websites along with a three-sentence analysis of the Vienna Convention.  That is not the proper analysis

2  in this instance.

3         To establish that the material was properly classified under section 1.4(b)—and thus justifiably

4  withheld—the government's declaration need only be "plausible and logical to justify the invocation of

5  a FOIA exemption in the national security context." *Am. Ctr. for Law & Justice v. Dep't of State*, 354 F.

6  Supp. 3d 1, 9 (D.D.C. 2018) (citing *ACLU v. DOD*, 628 F.3d 612, 624 (D.C. Cir. 2011)) (internal

7  quotation marks omitted)).  Section 1.4(b) applies to foreign-government information, which is defined

8  as information provided to the United States Government by a foreign government "with the expectation

9  that the information, the source of the information, or both, are to be held in confidence." E.O. 13526, §

10  6.1(s).

11         That is precisely the situation at hand.  Section 1.4(b) applies because the information in

12  question was produced under, and is governed by, an existing international agreement—the General

13  Security of Information Agreement ("GSOIA")—which mandates that the information, the arrangement,

14  or both, be kept confidential.  Furthermore, the information is classified as "Mugbal."  These facts

15  provide a clear and "plausible" justification for the application of section 1.4(b) to this material.  Indeed,

16  the explanation here closely tracks that approved of in *Am. Ctr. for Law & Justice*. 354 F. Supp. 3d at 11

17  (declaration was sufficient for purposes of section 1.4(b) where information was provided with

18  expectation that it would be kept confidential, the foreign nation continues to have that expectation, and

19  other classified information in the record were derived from similarly classified sources).  So too here

20  because

21  "State has no obligation to answer Plaintiff's multitude of questions — in fact, E.O. 13526 does not

22  'require that a classifying authority indicate the person who classified the information in question or

23  when [that] information [was] originally classified.'" *Id.* (citing *Canning v. U.S. Dep't of State*, 134 F.

24  Supp. 3d 501, 502 (D.D.C. 2015)).  On the contrary, "the text of Exemption 1 itself suggests that ***little***

25  ***proof or explanation is required beyond a plausible assertion*** that information is properly classified."

26  *Id.* (citing *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007)) (emphasis added).

27

28

1   Plaintiff offers no binding case law to challenge this analysis. Instead, its argument rests

2   entirely on conclusory allegations about informal titles and a collection of U.N. websites, none of which

3   constitute relevant authority.

4         **(ii)      Plaintiff's arguments about Section 1.4(d) are contrary to law.**

5         Putting aside the applicability of section 1.4(b), Plaintiff dwells on the facts that "foreign

6   relations" and "foreign activities" are not defined in E.O. 13526. Plaintiff proceeds to point out that the

7   document at issue in *American Center for Law & Justice* was not withheld in full and reviewed in

8   camera. Those facts are different than this case.

9         That case involved a report "containing information" related to the work of the United Nations

10  Relief and Works Agency for Palestine Refugees. *Id.* at 5. In that case, there is a reason State only

11  redacted part of that record: it chose to do so. *Id.* Furthermore, that case did not involve a complete

12  document governed by an agreement with a foreign government, with the foreign government's explicit

13  expectation that the entire document remain restricted. In contrast, here, Israel specifically designated

14  the entire record as "Mugbal." As discussed below, this distinction further supports the argument

15  against in camera review because—unlike *American Center for Law & Justice*—the issue here centers

16  on a foreign government's expectation regarding the confidentiality of the record in its entirety.

17        **3.      State satisfied the applicable standard by providing a "plausible" affidavit

18        demonstrating reasonable specificity and a logical relation to the exemption.**

19        Plaintiff argues that "DOS's declaration is devoid of reasons for why disclosure could be

20  expected to result in damage to national security, as required by Section 1.1(a)(4) of E.O. 13526."

21  Pltf.'s Opp. at 15. That is not the standard. In fact, "the text of Exemption 1 itself suggests that little

22  proof or explanation is required beyond a plausible assertion that information is properly classified."

23  *Am. Ctr. for Law & Justice*, 354 F. Supp. 3d at 11 (citing *Morley*, 508 F.3d at 1124). Moreover, "in the

24  national security context… 'substantial weight' must be given to agency declarations." *Id.* at 7 (citing

25  *ACLU v. DOJ*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003)). The declaration here was entirely appropriate to

26  support classification.

27

28

REPLY ISO CROSS-MSJ
3:24-cv-01095-JD

**B.    Plaintiff fails to articulate facts establishing that classification was solely "in order to" conceal unlawful activity.**

Plaintiff claims again to have "provided sufficient evidence to show that the MOU Defendants are concealing allows for disparate treatment of Palestinian Americans," and proceeds to claim it is the agencies' burden to disprove such conclusions. Pltf.'s Opp. at 17. That is not the issue and that is not the law.

Section 1.7(a)(1) states that information may not be classified "in order to"—that is, ***for the purpose of***—concealing "violations of law, inefficiency, or administrative error." But, here, the law firm continues to challenge the underlying legality of an unconfirmed policy. That issue is not before the Court. The issue under section 1.7(a)(1) is whether Plaintiff has articulated facts regarding the subjective intent behind the classification decision; mere conclusory allegations are not enough. *See Am. Ctr. for Law & Justice v. Dep't of State*, 354 F. Supp. 3d 1, 13 (D.D.C. 2018) ("Plaintiff takes a final swing, positing that State is merely trying to save face by classifying this hot-button information…[Plaintiff's] argument, however, is mere unsupported speculation, and the Court will not entertain it…") (citing *Competitive Enter, Inst. v. Dep't of Treasury*, 319 F. 3d 410, 418 (D.D.C. 2018) (rejecting conclusory assertion that agency classified document to avoid embarrassment)). Plaintiff offers no such evidence.

Moreover, even if Plaintiff had provided evidence about the subjective intent behind this classification decision, it would not change the outcome if the record were properly classified for other reasons. *See id.* ("Even if certain portions could be considered [as falling under Section 1.7(a)(2) as 'embarrassing' to the agency], 'it would nonetheless be covered by Exemption 1'" because "independent of any desire to avoid embarrassment, the information [was] properly classified") (citations omitted). That is so here. Thus, section 1.7(a)(1) is irrelevant in this matter.

**C.    Plaintiff's segregation argument is a failing attempt to salvage its claims.**

Plaintiff contends that "this Court cannot affirm DOS's categorical conclusion without ensuring that it is actually true for each page of the sole, thirteen-page record at issue" and argues that segregation is warranted under *Transgender Law Center*. Plaintiff misses the distinction between deliberative

1    process cases and cases like this one, which trigger concerns about foreign relations and national

2    security.

3            In the FOIA context, the D.C. Circuit has held that "[w]hen an agency meets its burden through

4    affidavits, in camera review is neither necessary nor appropriate, and in camera inspection is particularly

5    a last resort in national security situations." *Mobley v. CIA*, 806 F.3d 568, 588 (D.C. Cir. 2015)

6    (emphasis added).  The facts here, which involve Exemption 1, differ from *Transgender Law* Center,

7    which involved Exemptions 5 (deliberative process), 6 (personal privacy), and 7 (law enforcement

8    purposes).  46 F.4th at 782.  Here, the agencies have provided appropriate declarations for a record that

9    potentially falls under two categories of section 1.4 and expressly stated their concerns about national

10    security.  *See* Dkt. No. 42-1 ("Kootz Decl.") at ¶¶ 25-32.  No further action is required beyond a

11    "plausible" rationale outlined in a proper affidavit, which is exactly what has been provided.

12

13          **D.**    **The *Fitzgibbon* test has not been satisfied because Plaintiff does not show that the information requested is "as specific" as the information previously released.**

14            In light of the "official" disclosure element, Plaintiff refocuses now on a lone document from

15    State:  a "Fact Sheet" allegedly describing a few paragraphs of the 13-page document on a high-level of

16    generality.  Pltf.'s Opp. at 17.  This argument fails the same test just under a different element.

17            As noted, the D.C. Circuit has established a test, sometimes referred to as the *Fitzgibbon* test,

18    under which a plaintiff must satisfy three elements to demonstrate that information has been "officially

19    acknowledged."  Specifically, information is considered "officially acknowledged" if: (i) "the

20    information requested [is] as specific as the information previously released;" (ii) "[the information

21    requested] match[es] the information previously disclosed;" and (iii) "[the information requested]

22    already ha[s] been made public through an official and documented disclosure." *Fitzgibbon v. CIA*, 911

23    F.2d 755, 765-66 (D.C. Cir. 1990). The D.C. Circuit has further emphasized that "[t]his test is quite

24    strict," and "[p]rior disclosure of similar information does not suffice; instead, the *specific information*

25    sought by the plaintiff must already be in the public domain *by official disclosure*." *ACLU v. DOJ*, 640

26    F. App'x 9, 11 (D.C. Cir. 2016) (internal citations omitted) (emphasis added).  What's more, courts have

27    consistently held that the plaintiff bears the burden of proving waiver, and these elements create a "high

28

1    hurdle for a FOIA plaintiff to clear" because of the government's "vital interest in information relating to

2    national security and foreign affairs." *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993).

3        At a minimum, the paragraphs in the "Fact Sheet" fail to satisfy the first element because, by

4    their own description, they are not "as specific." *See, e.g.*, *Elec. Frontier Found. v. DOJ*, 532 F. Supp.

5    2d 22, 24 (D.D.C. 2008) (ruling that waiver did not apply because information in the public domain was

6    not as specific as the information requested); *Public Citizen v. Dep't of State*, 787 F. Supp. 12, 13-15

7    (D.D.C. 1992) (plaintiff failed to show that an ambassador's testimony was "as specific as" the

8    documents sought, or that the testimony "matched" the information contained in those documents).

9        This rule is important because  failing to apply it would, ironically, disincentivize any disclosure.

10   *See Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993) (reasoning that to hold otherwise in

11   a case where the government had affirmatively disclosed some information about a classified matter

12   would give the agency "a strong disincentive ever to provide its citizenry with briefings of any kind on

13   sensitive topics").

14   **CONCLUSION**

15       For the foregoing reasons, State and Homeland Security respectfully request that the Court enter

16   an order granting summary judgment in the agencies' favor on the cause of action brought by Plaintiff.

17

18   DATED: November 21, 2024          ISMAIL J. RAMSEY
19                              United States Attorney

20                              */s/ Benjamin J. Wolinsky*
21                              BENJAMIN J. WOLINSKY
                                Assistant United States Attorney

22                              Attorneys for the United States of America

23

24

25

26

27

28

REPLY ISO CROSS-MSJ
3:24-cv-01095-JD